ALFRED E. ALDRIDGE, Respondent, *v.* ÆTNA LIFE INSURANCE COMPANY, Appellant.

Evidence — when letter written by physician of insured, in reply to questions asked by the insurance company, not binding upon insured as an admission by him — when such letter may be used to impeach testimony of such physician.

If one party refers another, on a disputed fact, to a third person as authorized to answer for him, he is bound by what his referee answers upon the occasion, as much as if the answer had been given by himself. This rule is not applicable to a letter offered in evidence, the particular statements in which were not made at the request of the party against whom it was offered, but rather upon the demand of the opposite party, and where the party against whom it was offered did not see the letter or know its contents until it was produced in court. Such a letter, however, is competent for the purpose of impeaching the testimony of the person by whom it was written, if it contained anything in the nature of an admission, even though it was not binding on the plaintiff.

*Aldridge* v. *Ætna Life Ins. Co.*, 136 App. Div. 915, reversed.

(Argued December 7, 1911; decided January 9, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 19, 1910, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*T. E. Hancock* for appellant. It was error for the court to exclude from the attention of the jury the letter

of Dr. McMorrow and to sustain the objection to that evidence. (*Wehle* v. *Spellman*, 1 Hun, 634; Stephen's Digest of Evidence, 72, 73; *Ashner* v. *Abenheim*, 19 Misc. Rep. 285; *Mook* v. *Park, Davis & Co.*, 9 Misc. Rep. 90; Wigmore on Ev. § 1070; Greenl. on Ev. § 182; *Green* v. *White*, 37 N. Y. 405; *Davenport* v. *Prentice*, 126 App. Div. 451; *Baldinger* v. *Levine*, 83 App. Div. 130, 133; *Capron* v. *Thompson*, 86 N. Y. 418; *Redmond* v. *Ind. Ben. Assn.*, 150 N. Y. 167.)

*Walter Welch* for respondent.

WERNER, J. In this case we are all agreed that the judgment must be reversed, but we differ as to the reasons for that result. The action is upon an accident policy, under which the plaintiff claims to be entitled to a specified weekly indemnity for injuries which caused appendicitis. The question is whether a certain letter, written to the defendant by the plaintiff's attending physician, is binding upon the plaintiff as though it had been written by himself. We think the proper determination of that question obviously depends upon the law of agency, for we can think of no principle upon which the plaintiff can be charged with responsibility for the representations concerning his physical condition and treatment made by his attending physician, unless it be that he constituted the physician his agent by authorizing him to make the representations. The theory upon which the opinion of our brother HAIGHT seems to be based is that the plaintiff is bound by the admissions of his physician simply because the latter wrote a letter at the request of the former, and that is precisely the point upon which we differ. There can be no doubt that "if one party refers another, on a disputed fact, to a third person *as authorized to answer for him,* he is bound by what his referee answers upon the occasion, as much as if the answer had been given by himself." Our position is that this rule is not applicable to the case at bar, *first,* because the par-

ticular statements in the letter over which this controversy has arisen were not written at the request of the plaintiff, but rather upon the demand of the defendant; and, *second,* for the reason that the plaintiff did not see the letter or know its contents until it was produced in court.

After the plaintiff had presented to the defendant the usual proofs of loss, the defendant's manager wrote to the plaintiff, stating that "under the circumstances surrounding the case it will be necessary for us to have further statistics or a statement from the attending physician. *We wish him to advise us, over his own signature,* on what dates he treated you for Appendicitis previous to this accident which is claimed to have been sustained on May 16th, 1908." This written request made by the defendant's manager was taken by the plaintiff to Dr. McMorrow, his attending physician, whom he asked to write to the defendant in reply to the letter received from its manager. That is all the plaintiff ever had to do with the letter written by the doctor. The plaintiff did not see it or know its contents. It was not a letter dictated by the plaintiff, but one which he asked his physician to write in compliance with the demand made by the defendant. This request by the defendant was not for a more comprehensive or specific statement of fact from the plaintiff, but "for further statistics" from the attending physician "over his own signature." The request was for information peculiarly within the knowledge of the attending physician, and for which he alone was to be held responsible. In these circumstances we think the doctor cannot be regarded as the agent of the plaintiff, and that he is rather an independent outsider for whose mistakes or misstatements the plaintiff cannot be held responsible.

Under the head of "admissions" Mr. Greenleaf states the rule, which we are discussing, to be that "admissions of a third person are * * * receivable in evidence, against the party who has *expressly referred*

*another to him* for information, in regard to an uncertain or disputed matter. In such cases, the party is bound by the declarations of the persons referred to, in the same manner, and to the same extent, as if they were made by himself." (Greenl. on Ev. [14th ed.] § 182.) In the case of *Rosenbury* v. *Angell* (6 Mich. 508) this statement of the rule is criticised as being inadvertently too broad because it ignores the fundamental idea of agency, which is the only logical basis for the rule. That case was identical in principle with the case at bar. There the plaintiff had referred some of his creditors to certain business men for information concerning the plaintiff's pecuniary responsibility. A witness for one of these creditors was asked whether he had made such inquiries, and if so what he had learned. Counsel for the plaintiff objected to this testimony, but the court admitted it. Upon review in the Supreme Court it was held that this was error. With characteristic perspicacity Judge CHRISTIANCY, who wrote in that case, laid bare the danger of so general a statement of the rule. He said: "Here the whole element of agency — the only element which can sustain that rule — seems to be inadvertently overlooked; and a rule is laid down which will in all cases bind parties by the declarations of any third person to whom any man may refer another for mere inquiry, though the party referring had no idea or intention of giving to such third person any authority to speak for him, or of being bound by his declarations; and the person referred to had no reason to suppose any such intention. Such a rule would operate as a trap upon parties, and render it wholly unsafe for a man ignorant of the nature of any facts or transaction in which he might be interested and honestly desiring to put his neighbor in the way of ascertaining them, to advise him to inquire of any third person who he might suppose could explain it. It would put an end to all honest mutual inquiries of this kind." Further on in the opinion the learned judge refers to the true rule which

we have already quoted, to the effect that "if one party refers another, on a disputed fact, to a third person, as authorized to answer for him, he is bound by what his referee answers upon the occasion, as much as if the answer had been given by himself." (1 Phillips on Evidence [4th Am. ed.], p. 517.) This is the rule with a clear statement of the reason upon which it rests. It is only when the third person "is authorized to answer for" the person who has referred to him, that the latter is bound by what the former may say.

A similar disposition of the same question was made in *Prostor* v. *Old Colony R. R. Co.* (154 Mass. 251) where the plaintiff sued for damages for the unlawful setting back of water which overflowed his land. The plaintiff offered to prove that he went to the president of the defendant about the matter and was referred by him to the attorney for the railroad, with the statement that "they wanted to leave it to our attorney Judge Harriman." That thereupon the plaintiff submitted the matter to Judge Harriman, who made an examination of the premises and stated that a certain amount of money was due the plaintiff. This offer was excluded. Upon appeal the ruling was sustained, the Supreme Judicial Court saying: "It would not follow from the plaintiff's offer of proof that Judge Harriman was referred to in such a way as to constitute him an agent for the defendant, with authority to make admissions of promises to the plaintiff." It seems to us that the case at bar affords a much stronger illustration of the principle for which we contend than either of the cases we have cited. Here the insurance company requested the plaintiff to get a further statement from the doctor over his own signature. In this letter there was nothing to indicate that anything which the doctor might say would be regarded as binding upon the plaintiff. The latter in asking the doctor to write to the defendant merely followed instructions; he himself gave none. The defendant did not ask

for any further statement from the plaintiff, but for an independent statement of the physician. In these circumstances we can find nothing which authorized the physician to bind the plaintiff by his statements.

Although the letter of Dr. McMorrow, which was excluded, was not admissible upon the theory that it was binding upon the plaintiff, it was competent for the purpose of impeaching the testimony of the doctor himself. The very fact that the doctor undertook, upon his oral cross-examination, to explain certain matters referred to in the letter, was of itself sufficient reason why it should have been received in evidence. If it contained anything in the nature of an admission, it was competent against him even though it was not binding on the plaintiff. Its exclusion was clearly error, and for that reason we concur in the result reached by our brother HAIGHT.

HAIGHT, J. This action was brought to recover the weekly indemnity provided for under an accident insurance policy issued by the defendant to the plaintiff, in consequence of an injury received from a fall by the plaintiff from a veranda, which is alleged to have caused acute appendicitis, necessitating an operation which caused total disability and several weeks loss of time.

Upon the presentation by the plaintiff to the defendant of the proofs of loss the manager of the defendant wrote plaintiff a letter acknowledging its receipt, and then stating, "under the circumstances surrounding the case it will be necessary for us to have further statistics or a statement from the attending physician. We wish him to advise us, over his own signature, on what dates he treated you for appendicitis previous to this accident, which is claimed to have been sustained on May 16th, 1908." Upon the receipt of this letter it appears that the plaintiff called upon Dr. McMorrow, who was his family physician, and thereupon the doctor wrote the company the following letter at the request of plaintiff:

"SYRACUSE, *July* 7, 1908.
"Mr. B. E. WATSON,
    "Ætna Life Insurance Co., Syracuse, N. Y.:
    "DEAR SIR.— I have before me your letter to A. E.
Aldridge, in which you request him to have me send you
further statistics in regard to my treatment of Aldridge
for appendicitis previous to this accident.
    "I first attended Aldridge for appendicular involve-
ment April 10, 11, 12 and 13, 1903. ˙ He had at this time
localized tenderness over appendix. Tempt. 100 F. and
vomiting. I next attended him for a recurrent attack
from May 2, 1905, to May 11, 1905; attack was similar
to above. The next attack commenced June 1, 1906, and
lasted until June 11, 1906. The chief symptoms were
pain, localized tenderness, vomiting and constipation,
with slight fever. He was next confined to his bed from
October, 1906, to November 1, 1907, with about the same
symptoms. This last attack following accident all the
symptoms were intensified. His temperature reached 104
F., there was severe pain and abdominal tenderness and
rigidity, nausea and vomiting and a white blood count of
32000. During the intervals I frequently attended Mr.
Aldridge at my office for digestive disturbances and a
mild degree of discomfort in the appendicular region.
Sometimes he would have a moderate amount of pain
and slight fever, but not acute enough to cause him to
take to his bed.
                "Yours very truly,
                        "F. M. McMORROW, M. D."

    The defendant produced this letter upon the trial on
the cross-examination of Dr. McMorrow, who identified
it. Subsequently it was offered in evidence, but under
óbjection it was excluded and an exception was taken by
the defendant, it then appearing that the plaintiff had
not seen the letter after it was written. The insurance
policy in question was ˙ issued in January, 1905. The

application of the plaintiff, upon which the policy was
issued, contained the statement that he had not received
medical attention within the past two years.  That was
one of the issues that was litigated upon the trial and
was the issue upon which the company had asked the
plaintiff for a statement of his physician as to the dates
upon which he had been treated for appendicitis prior to ·
the accident.

Referring to the statement contained in the letter of
the doctor, we find that he stated that he attended the
plaintiff for appendicular involvement in April, 1903,
which would be within two years of the time that the
application was made by the plaintiff for insurance.  The
question is thus presented as to whether the defendant had
the right to rely upon this statement and as to whether
it was competent evidence to be considered by the jury
upon the trial.  The rule, as stated by Greenleaf (Vol. 1,
§ 182), is as follows: "The admissions of a third person
are also receivable in evidence against the party who has
expressly referred another to him for information in
regard to an uncertain or disputed matter.  In such cases,
the party is bound by the declarations of the person
referred to, in the same manner and to the same extent
as if they were made by himself."

In the case of *Rosenbury* v. *Angell* (6 Mich. 508) CHRIS-
TIANCY, J., in delivering the opinion of the court, criti-
cised the rule stated by Greenleaf as being too broad and
then, after considering the English cases upon the sub-
ject, reached the conclusion that the rule is based upon
the principle of agency, in which a party has given another
person authority to speak for him.  He, consequently,
held that, where a party, claiming property alleged to
have been transferred to him for the purpose of defraud-
ing creditors, was inquired of by a creditor as to his
responsibility and referred the creditor to the business
men of the place where he had formerly resided, to
ascertain in regard to such responsibility, this reference

did not authorize the statements of the business men of such place to be given in evidence in behalf of the officer who subsequently attached the property at the suit of the creditor.

In *Lambert* v. *People* (76 N. Y. 220) the defendant was indicted for perjury and a witness for the prosecution testified that, upon applying to the prisoner for information, he was referred to the bookkeeper, who, he said, would furnish "whatever information was contained in the books." The witness was then permitted, under objection and exception, to state that the bookkeeper had stated in the absence of the prisoner that certain entries in the books of the company as to policies issued were false and that the prisoner knew they were false. This was held error, upon the ground that it exceeded the authority given by the prisoner to the bookkeeper. (*Allen* v. *Killinger*, 8 Wall. (U. S.) 480; *Duval* v. *Covenhoven*, 4 Wend. 561.)

But with these and other similar limitations the rule, as stated by Greenleaf, appears to have been followed in many reported cases. Assuming, therefore, that the rule is based upon the principle of agency, the question arises as to whether the doctor was authorized by the plaintiff to write the letter which he did. As we have seen, the insurance company had called upon the plaintiff to furnish a further statement as to the dates upon which he had been treated for appendicitis by his doctor and that they wished a statement from the doctor over his own signature as to such dates. The plaintiff takes such letter to his doctor and requests the doctor to answer it and the doctor did so answer by the letter which was offered in evidence. It appears to us that this was brought within the rule to which attention has been called, and, consequently, the letter was evidence which the defendant had the right to have presented to the jury.

It is now contended on behalf of the plaintiff that, even if the letter was competent evidence, the substance of its contents has been made to appear in the defendant's

cross-examination of Dr. McMorrow given upon the trial. It appears that the plaintiff did not see the letter after it was written and had no knowledge that it contained the statement that he had been treated for appendicitis in 1903. While the letter was competent, it was not conclusive evidence, and the plaintiff had the right to show that the statements therein contained were erroneous, and upon the cross-examination of the doctor by the defendant's counsel, when his attention was called to the contents of the letter, he testified that his statement made with reference to the first treatment of the plaintiff in 1903 was erroneous as to the date; that instead it was 1905. But we are of opinion that this did not cure the error in excluding the letter from evidence, for it involved the credibility of the witness and the defendant had the right to have the letter itself go to the jury in connection with the doctor's subsequent explanation that the date therein stated was erroneously given.

For the error above referred to the judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., WILLARD BARTLETT and CHASE, JJ., concur with WERNER, J.; GRAY and VANN, JJ., concur with HAIGHT, J.

Judgment reversed, etc.