(152 App. Div. 588.)

### BEATTY v. IRELAND et al.

(Supreme Court, Appellate Division, Third Department. September 27, 1912.)

1. REFORMATION OF INSTRUMENTS (§ 44*)—PAROL EVIDENCE AFFECTING DEED —ADMISSIBILITY.

In a suit to reform a deed so as to include a 13-acre tract which was excluded from the description in the deed but forming a part of the farm sold, evidence of conversations between plaintiff and the grantor's agent when plaintiff was shown over the place, tending to show of what the farm consisted, was not inadmissible because it tended to vary the terms of a written contract, since every suit to reform a written instrument has that effect.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 155, 156; Dec. Dig. § 44.*]

2. REFORMATION OF INSTRUMENTS (§ 45*)—PROOF REQUIRED.

To warrant a decree reforming an instrument, the evidence must be clear and convincing.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

3. REFORMATION OF INSTRUMENTS (§ 45*)—DEEDS—PROPERTY INCLUDED—EVIDENCE.

In a suit to reform a deed, evidence *held* to sustain a finding that a 13-acre tract, which was excluded from the description, was intended to be included.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 157–193; Dec. Dig. § 45.*]

4. PRINCIPAL AND AGENT (§ 115*)—DECLARATION BY AGENT—CONCLUSIVENESS AGAINST PRINCIPAL.

A vendor who refers the purchaser to his agent to point out the boundaries of the land is bound by the agent's declaration in that regard.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 339–343; Dec. Dig. § 115.*]

Houghton, J., dissenting.

Appeal from Special Term, Ulster County.

Action by Robert A. Beatty against John B. Ireland and others. Judgment dismissing the complaint, and plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Stanley Holcomb Molleson, of New York City, for appellant.
Henry Goldstein, of New York City, for respondent Ireland.
Jno. B. Ball, of Poughkeepsie, for respondent Perkins.

SMITH, P. J. This is an action to reform a deed. On April 17, 1906, the plaintiff contracted to purchase of John B. Ireland

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"the lower Pell farm at Esopus, New Paltz, containing about one hundred and forty-three acres." Thereafter a deed was given, in which the words "lower Pell farm" did not appear, but certain land was described by metes and bounds, and it was stated as containing 143 acres, more or less. The description in the deed omitted about 13 acres, which is claimed by the plaintiff to have been a part of the lower Pell farm which he contracted to purchase. Henry House was the agent of Ireland before the sale to the plaintiff, in control of this property. Upon the witness stand he was asked if he had taken Mr. Beatty over the place, and was then asked what he did on those occasions. This was objected to by the defendants' counsel as incompetent, immaterial, irrelevant, and not within the issues here. The court then stated:

"The purpose, of course, is to show that Mr. Beatty formed from these conversations an idea what the Pell farm consisted of. The effect of that is to vary the terms of a written contract. I will sustain the objection, because I think it indirectly gets around to an attempt to vary the conditions of a written contract. It seems to me it is immaterial what knowledge he gained, having gained that knowledge if he wished to buy 143 acres, 143 acres plus 13 acres, it was his business to reduce it to writing in that shape, and not in some other shape."

Many years ago Robert Livingston Pell was the owner of a large tract of land in Ulster county. In 1844 he purchased the 13 acres in question, which lay adjoining the 143 acres, which was, in fact, included in the deed from Ireland to plaintiff. Prior to this time this 143 acres did not reach the highway and a right of way existed over some lands to the west owned at different times by different persons. This 13 acres adjoined the highway, and upon its purchase Pell constructed a large iron gate, upon which was put his name, "R. L. Pell," and a roadway was put alongside of the brook up to a point where it connected with the 143 acres. It seems that this roadway was not generally used for ingress to and egress from the 143 acres. It lay alongside of a brook and was washed out in the spring floods, so that the main road to and from the 143 acres was over the right of way which originally attached thereto, and which has ever since followed it. In 1875 the sheriff sold some 26 parcels of land upon an execution against Pell to one Charles E. Larned. Larned was evidently a dummy for Pell, and immediately upon Pell's death in 1880 conveyed all of these 26 parcels to John B. Ireland, who was the son-in-law of Pell, upon the nominal consideration of $1. From that time Ireland sold off different ones of these 26 parcels until he had left only 3 parcels, one the upper Pell farm so-called, another the Elmore place, and another the lower Pell farm. In this statement I speak of the lower Pell farm as including this 13 acres. Confessedly there were no buildings upon this 13 acres. It was attached to no other property belonging to Ireland or to Pell. It had always been used in connection with the 143-acre lot. There were no fences between the two. About 1905 plaintiff commenced to negotiate for one of these three parcels of land. His offers were not accepted, and thereafter Ireland first sold the upper Pell farm and afterwards the

Elmore place. That left only the lower Pell farm for sale. Negotiations were again renewed, and finally the lower Pell farm was sold under contract to the plaintiff for the sum of $8,500. The $500 was paid down, and the $8,000 was paid by assuming a mortgage upon which Ireland represented there was $8,000 due. Before the contract of sale was signed, and before the negotiations were complete, Ireland asked the plaintiff to go upon the farm and see what there was of it, and told the plaintiff that he would write his agent, Henry House, to show him the place. Beatty and his wife went to Esopus, were met by Henry House at the station, who took them upon the farm, and showed them the boundaries, and represented the farm as including the 13 acres in question. Thereafter the contract was signed. After the contract was signed, Ireland stated that that was the last of the Pell property in Ulster county. Thereafter, in May, 1910, one George Simpson wrote to him about some of this property, to which Ireland replied:

"In reply to your question will say, have no property at Esopus now. My wife had her father, Robert Livingston Pell's beautiful place, which unfortunately was sold to a German Catholic Society, who tore down his house and erected a palatial structure, for college I presume. I had two smaller places below, both of which have been sold, as most of my family married and scattered.    Yours truly,        John B. Ireland."

About 1883 Ireland sold this 143-acre plot to one Moore, reciting a consideration therein of $77,000. A mortgage was given back of $15,000. This transaction was simply a blind because Moore soon retransferred the property to Ireland. In that mortgage this 13 acres was not included. At the time of the purchase by plaintiff Ireland represented that that mortgage had been paid down to $8,000, but asked the plaintiff to send the interest to him that he might pay the interest on the mortgage, instead of paying it directly. This Ireland did for two or three years, and finally sent the interest to the mortgagee. His check was returned with a statement that the mortgage was $10,000, and not $8,000. Plaintiff was compelled to pay the extra $2,000, and thereafter brought an action against Ireland, and finally recovered the $2,000 from Ireland. At no time after the sale to plaintiff did Ireland attempt in any way to dispose of this 13 acres. He made no attempt to induce the plaintiff to buy the same either at the time he made the original contract or later when the controversy arose as to the misrepresentation of the amount due upon the mortgage.

[1-3] From this statement of facts the conclusion seems to be irresistible that both Ireland and Beatty understood that there was being sold and purchased, not only the original 143-acre tract, but the adjoining 13-acre tract, as part of "the lower Pell farm." As to Beatty, the trial court has specifically found "that at all times the plaintiff believed that the lower Pell farm embraced all the property described in the complaint." As to Ireland, the inference is just as strong. After the contract was made, he stated to the plaintiff that that was the last of the Pell property in Ulster county. When Simpson wrote to him thereafter asking him about his property there, he writes to him that he has none left, that all has been sold.

More than that, he was attempting to get a higher price from Beatty. If he had not intended to include this 13 acres in the sale already made, he would have urged its purchase, that he might get a larger consideration. Thereafter Beatty discovered that Ireland had misrepresented to him as to a $2,000 due upon the mortgage. He would naturally have attempted to have that amount reduced by selling to Beatty this 13 acres, if he had not supposed that they had already been sold. Although he was apparently hard pressed for money, no attempt has been made to sell this 13 acres to any one else, and ·no claim at any time made by Ireland that he was the owner thereof. The inference would seem to be irresistible that both parties supposed that this 13 acres was included in the description contained in the deed. The learned trial judge, however, seemed· to think that the parties were bound by the use of the words "about one hundred and forty-three acres." All these papers, however, were drawn by Ireland himself. In some way he had evidently been misled into believing that the 143-acre description included both. It evidently had been inadvertently omitted from the deed to Moore and from the mortgage, and the description in the deed to plaintiff was evidently taken from that mortgage. It is a very ₅simple matter for a mistake of this nature once made to be followed in subsequent papers drawn. The fact, therefore, that the contract states that the lower Pell farm is about 143 acres has to my mind little significance in determining what was the real intent of the parties. The learned trial judge seems to have considered this evidence as an attempt to vary a written contract by parol, and to have excluded some of the evidence upon that theory. This is just such an attempt. It is always such an attempt when a written contract is sought to be reformed and is always allowable for that purpose. It is true that in an action ₅to reform an instrument the evidence must be clear and convincing. By some authorities it is said that the plaintiff's case must be proven beyond a reasonable doubt. However strict the requirement of proof in actions of this nature, we are convinced that the plaintiff has fully met it, and shows beyond a reasonable doubt the intention of both parties in making this contract to include the 13 acres in the sale of the lower Pell farm.

[4] There is another aspect of the case in which I think the plaintiff is entitled to recover upon the findings of the trial court. The fifteenth request to find of the plaintiff is as follows:

"That previous to the execution of said contract the defendant's authorized agent, Henry J. House, pointed out to the plaintiff on a view of the premises, the boundaries of the lower Pell farm and included therein the whole of the property described in the complaint."

This was found. The evidence of the plaintiff is to the effect that Ireland sent him to the farm to look at the boundaries and told him that he would write to his agent House to show him the place; that upon his arrival at the station House was there and took him to the farm, and showed him the boundaries, including this 13 acres. In Wigmore on Evidence, § 1070, the rule is stated:

"If a party, instead of expressing his belief in his own words, names another person as one whose expected utterances he approves beforehand, this

amounts to an anticipatory action of that person's statement; and it be-- comes, when made, the party's own."

In Herman on Estoppel, § 1080, the text reads:

"The principal is bound by the acts of his agent if he clothe him with powers calculated to induce innocent third persons to believe the agent had due authority to act in the given case. He who created the trust, and not the purchaser, ought to suffer."

There are many cases in the books where corporations have been held estopped by the declarations of their agents. Within this rule of law, after Ireland had referred the plaintiff to his agent House to point out the boundaries of the land, and after the land had been pointed out by House as including this thirteen acres upon which the plaintiff relied, it would seem that the plaintiff should be precluded from afterwards asserting that they were not included within this contract.

The judgment should, therefore, be reversed upon law and facts and a new trial granted, with costs to appellant to abide the event.

Judgment reversed on law and facts, and new trial granted, with costs to appellant to abide event. The particular findings of fact which are held to be against the weight of evidence are Nos. 2, 6, 7, 8 and 11. All concur, except HOUGHTON, J., dissenting in memorandum.

HOUGHTON, J. I dissent. While perhaps the witness House should have been permitted to answer some of the questions propounded to him, the questions themselves were so objectionable in form as to justify a refusal to permit them to be answered. If any error was committed in refusing to permit him to answer such questions, I do not think it was sufficient to warrant a reversal of the judgment. Besides, the witness was subsequently permitted to tell all that he did when he showed the plaintiff over the Point farm and pointed it out to him, and was also permitted to testify to his instructions from the defendant Ireland respecting the sale of the same. Any possible error was cured by this subsequent admission of the testimony.

There is evidence that the 13-acre tract was divided from the main farm by a fence, and there is no evidence that Larned was a dummy for Pell in buying the 26 parcels sold by the sheriff under execution. The ground upon which reformation of the deed was asked is that there was a mutual mistake. There is no claim that the defendant Ireland defrauded the plaintiff or misrepresented to him in any way. If the plaintiff shall recover at all, it is upon the ground that both he and Ireland thought and believed that the 13-acre tract was a part of and went with the Point farm, said to contain 143 acres. The Point farm deeded to the plaintiff did contain 143 acres and 2 more, so that the plaintiff got 145 acres when he thought he was buying 143. He now wants 13 acres added to it because there are no improvements on the 13 acres, and because it had usually been pastured in connection with the Point farm. The plaintiff knew he was purchasing a farm which was covered by a mortgage which was said to be unpaid to the extent of $8,000, but which turned out to be unpaid

to the extent of $10,000. He paid only $500 in cash, and assumed to pay the mortgage as a part of the purchase price. He was a business man accustomed to business transactions. He could read and write, and had been negotiating for the property for some time. He ordered a search made. He ascertained that the description in the deed which was given him was the same as the description in the mortgage which he assumed. He observed that that description was according to courses and distances, rather than monument boundaries. By actual measurement he gets 145 acres, instead of 143, which he agreed to purchase. The mortgage, never covered the 13 acres, but he wants to add that unincumbered to the purchase which he made.

Conceding that Ireland thought he had disposed of the whole 26 parcels which were deeded to him by Larned, that fact does not prove that there was any mistake on his part in thinking that the 13 acres went with the Point farm, and that therefore he ought to give the 13 acres in addition to the 143 which he had agreed to sell to the plaintiff, and which he conveyed to him. The letter which Ireland wrote to Simpson indicates only that he thought he had no land left, but does not indicate that the 13 acres necessarily went with and formed a part of the Point farm. Never in any conveyance, so far as the record discloses, has it been included as a part of the Point farm. It is true that Pell in 1844 owned the Point farm, and while he owned it bought the 13 acres and constructed a pretentious entrance from the highway, which was later abandoned. When, however, the sheriff's sale took place, the 13 acres were separately sold, and, as has been pointed out, were not included in any conveyance or mortgage upon the Point farm thereafter, and no one pretended it ought to be included until the plaintiff some years after his purchase asserts that there was a mutual mistake in not including it. On the facts there should be no great straining in behalf of the plaintiff, for he himself confessed on the stand that he would have given a much larger price for the property if Ireland had not offered to sell it so cheap.

Nor can I assent to the doctrine that the defendant Ireland was bound by the acts and statements of the real estate broker House. The doctrine that one is bound by the statements of one to whom he refers another applies only to the particular thing so referred. Aldridge v. Ætna Life Ins. Co., 204 N. Y. 83, 97 N. E. 399. House, the broker, was only authorized to show the place to the plaintiff. He was not authorized to point out the boundary line. It would be a strange doctrine if a real estate agent authorized to sell a farm or a city lot could bind the owner by a statement as to the location of the boundary lines.

I think the plaintiff came very far short of showing a mutual mistake, and that the judgment was right, and should be affirmed.