MABEL MONTGOMERY, Plaintiff, *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Defendant.

Supreme Court, Washington County, March 5, 1931.

*Sears & Sears,* for the plaintiff.

*John H. Barker,* for the defendant.

ROGERS, J. Plaintiff proved the issuance of the policies, the death of the insured, the making of due proof of the death, the refusal of the defendant to pay and the other requisite formal facts, thus making a *prima facie* case for recovery. The defendant conceded on the trial that its first separate defense, fraud in the application for the policy, was unavailing because the application was not made a part of the policy. (Ins. Law, § 58.)

The second defense is that the insured suffered from heart disease, and had been attended therefor by a physician within two years before the issuance of the policy, and that the policy contained a proviso that it should be void if the insured was attended by any physician within two years before its date for any serious disease, or had within two years before its date disease of the heart.

The plaintiff contends that this defense amounts to a representation because no fraud is pleaded and the statute (Ins. Law, § 58) provides that all statements purporting to be made by the insured shall be deemed representations and not warranties; that by accepting the policies plaintiff made the language of this provision her own; that the provision is, as stated in *Archer* v. *Equitable Life Assurance Society* (218 N. Y. 18, 25) " metamorphosed " into a representation; that a misrepresentation does not necessarily effect a forfeiture, which is not favored; that in order to make a misrepresentation available as a defense, it must be alleged not only that a material statement is untrue, but also that the plaintiff knew it to be false and made it with intent to cheat and defraud. This argument cannot be accepted as sound. The policy by its very terms only takes effect if the insured has not been treated by a physician, etc., within two years. Otherwise, it is void. It is as if it never existed. If the clause were only a representation the word " void " in the clause would have to be changed to " voidable." The provision in the policy is part of its terms, part of its conditions, and, therefore, as the answer sets forth these terms and conditions, accompanied by the allegations that the insured was in fact treated by a physician, and did suffer heart disease within the two-year period, the defense is well pleaded.

The evidence to establish this defense is the attending physician's certificate made after the death of the insured and forming a part of the proofs of death. The defendant claims the statements of the

physician therein constitute voluntary admissions on plaintiff's part, and the plaintiff contends that the facts in connection with its execution and delivery do not justify its admission in evidence, or its contents deemed admissions.

Decision depends upon the facts, for under certain circumstances the statements in such a certificate are *prima facie* evidence of a voluntary admission that such statements are true. (*Rudolph* v. *John Hancock Ins. Co.*, 251 N. Y. 208.)

In the *Rudolph* case it was held that a physician's certificate, given pursuant to a provision in a policy of insurance, identical with the one in the instant case, was competent as evidence of a voluntary admission by the claimant. The *Rudolph* case was decided four to three. In the dissenting opinion the rule is recognized that where one voluntarily uses the affidavit of another, usually he admits the truth of the statements therein, but it invokes the principle that one is not bound by statements in an affidavit or certificate that he produces under circumstances rendering its production compulsory, citing and following *Redmond* v. *Industrial Benefit Association* (150 N. Y. 167) and other well-considered cases. The prevailing opinion insinuates agreement with this doctrine and seems to rest upon the proposition that the claimant's acts and statements after the certificate was made changed her attitude from an involuntary to a voluntary user thereof, and that by ratification she broadened the authority of the physician to bind her by his statements. If the majority held that the mere execution of the certificate at claimant's request and delivery to the company were sufficient to bind claimant, as admitting its contents, there would be no need to stress in the opinion the facts indicating claimant's approval of its contents and lack of coercion. In the instant case there are no acts showing approval of the certificate — nothing whatever to indicate that the plaintiff did more than she was bound to do by the terms of the policy as a condition precedent to recovery. She took the blank to the physician and requested him to fill it out and deliver it to the company. She could do no less, and she did no more. She did not read or sign it, and never saw it until it was produced by the defendant on the trial. She did not agree in the policy, or otherwise, that it should be treated as the truth. Had it come to her to read and sign, as in the *Rudolph* case, and thereafter had she delivered it to the company without protest it would have to be held that she acquiesced in its statements and it became her voluntary admission.

The defendant recognized the importance of having the claimant adopt the language of the certificate as her own by having printed on it a statement to be signed by the claimant agreeing that the

certificate shall be considered a part of the proofs of death in accordance with the terms of the policy. This printing is on the margin of the front page of the certificate opposite the important answers to be made by the physician. If claimant had signed it after its execution without doubt she would have been bound by its contents, or she might have signed it before the physician filled it out and thereby effectually constituted the physician her agent to supply the information. The fact that she did not do so may be considered in connection with the breadth and scope of the physician's authority to bind her by his statements.

" ' If one party refers another, on a disputed fact, to a third person, *as authorized to answer for him*, he is bound by what his referee answers upon the occasion, as much as if the answer had been given by himself.' * * *

" This is a rule with the clear statement of the reason upon which it rests. It is only when the third person ' *is authorized to answer for* ' the person who has referred to him, that the latter is bound by what the former may say." (*Aldridge* v. *Ætna Life Insurance Co.*. 204 N. Y. 83, at p. 87.)

Inasmuch as the policy provides that it was claimant's duty to furnish the company with answers by the physician on blanks provided by the company and since she took the blank to the physician and requested him to make it out, intending to comply with this provision of the policy, without doubt she made the physician her agent to write down answers to the questions, and if no other facts and circumstances were shown perhaps the mere fact that she asked the physician to make out the certificate to the company would be enough to establish *prima facie* evidence that she accepted it as her statement. The company, however, did not expect her to be bound by the certificate until she signed it at the place provided for her signature. The company recognized that until the claimant had an opportunity to read the statements it would be unfair to hold her bound by them. The physician became her agent simply to write down the answers and in so far as voluntary admission of the correctness of the answers is concerned his authority was subject to ratification by her signing the certificate at the place provided for her signature. Otherwise, there would be no occasion for the printed admission for claimant to sign. Its purpose is to specify the breadth of the physician's authority. The use of such blank contemplated the reservation of authorization to the physician to bind the plaintiff until she signed the admission and, therefore, it is not *prima facie* evidence of an admission of this plaintiff.

Even assuming, however, that the certificate is evidence of an

admission by the plaintiff of the truth of its contents it is only *prima facie* evidence at most and must be considered in connection with the other evidence in the case. Its probative force is weakened by its self-contradictory statements. Its weight is equivalent to the testimony of a witness who answers a question first, yes, and then, no. Unless such witness were an interested witness, or there was something in his manner to indicate which answer was true the court would have to speculate as to the truth. The answers of the physician are equally conflicting and being in writing and his manner and attitude in making them not being available, and the witness being apparently disinterested, the court is required to consider these contradictory statements with the other evidence in the case and determine whether the defendant has met the burden of proof upon it to establish that the insured suffered from heart disease before the issuance of the policy.

Plaintiff's statement, forming part of the proof of claim, was offered in evidence by the defendant. The policy does not provide that its contents shall not be considered as evidence. Moreover, as stated in the *Rudolph* case (p. 212): " The physician's certificate was one of three papers submitted as proof of loss. The whole admission should be taken together." In the dissenting opinion the claimant's statement is considered. Likewise in *Hanna* v. *Commercial Mutual Life Ins. Co.* (150 N. Y. 526) it is implied that if plaintiff's own certificate contained statements as to the cause of death and duration of illness a question of fact would be presented.

Plaintiff's certificate discloses an unequivocal statement that the cause of death was " operation for pus which formed on right lung, which never stopped discharging," and an equally clear statement that insured complained of ill health, viz., influenza and pneumonia about January 1, 1929, and that the duration of this illness was from January 1, 1929, until death.

The physician's certificate discloses contradictory and inconsistent statements as follows: In answer to question 8, cause of death, there is written, " Hepatic, Cirrhosis, Myocarditis." Duration, " 2 yrs." To question 9, contributory cause of death (secondary), there is written, " Empyema, 6 mos. Heartblock." Duration, " 10 dys." To question 10, date of your first visit or prescription in last illness, there is written, " Jan. 1929, Empyema." To question 13, have you prior to last illness attended and prescribed for the deceased — if so, give dates and other particulars, there is written in answer to date of prior attendance, " June 1927;" in answer to disease, " Hepatic Cirrhosis, Myocarditis," and in answer to duration of disease, " About 8 months."

So the physician in answering question 8 stated the duration

of the hepatic cirrhosis, myocarditis was two years, and in answering question 13 he stated the duration of these diseases was about eight months. Again, in answering question 9 he stated that the empyema lasted six months, and in further answering the question under the heading duration, he states, ten days. In answering question 10 he stated that he first attended insured in last illness in January, 1929, for empyema. If hepatic cirrhosis, myocarditis caused death, and the disease lasted only eight months, the insured did not have them before the policy was issued. If they caused death and were serious diseases, why did the physician treat the patient only for empyema from January, 1929? The answers to question 8 read alone are understandable, but not so when read in connection with answers to question 13. Likewise the answers to questions 9 and 10 are contradictory. It may be the physician, desiring to comply with the company's instructions on the back of the blank, speculated as to the primary cause of the insured's condition of empyema. Following question 8 is printed " see reverse side," and on the reverse side primary and contributory causes of death are defined as follows: " Remember that the primary cause is always the one of the *longer* duration." The physician may have thought that pneumonia in itself was the cause of death, but inasmuch as the liver trouble and heart trouble had lasted eight months and the lung trouble only seven months, and under these instructions he must answer that the former caused death, but, as before stated, if they were existent at and caused death and their duration was about eight months they did not exist prior to the date of the policy.

The claimant, being the wife of and living with the insured, should know when he first complained of ill health. If he had heart trouble or liver trouble prior to the issuance of the policy he did not complain to his wife about them, if her statement in her certificate is true, that he first complained of ill health in January, 1929, when stricken with influenza and pneumonia. Inasmuch as certain answers in the physician's certificate tend to corroborate the plaintiff's statement in her certificate, the defendant has not satisfactorily shown that the insured suffered from heart, or other serious diseases prior to the issuance of the policy.

Plaintiff should have judgment against the defendant for the amount due on the policies. The complaint does not demand interest, but it may be amended so as to include a demand for interest, which should be allowed from the date the proofs of death were delivered and the premium receipt books tendered to the defendant. Submit decision.