HARRY TENNENBAUM, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, September 17, 1931.

*Hammerman & Diamond* [*Benjamin Diamond* of counsel], for the plaintiff.

*Edward M. & Paul Grout* [*Dean Potter* of counsel], for the defendant.

LEWIS, DAVID C., J. On March 1, 1927, the defendant issued an industrial policy covering the life of Ethel Tennenbaum.

The policy incorporates the usual conditions: " or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the ' Space for Endorsements ' on page 4 in a waiver signed by the Secretary or an Assistant Secretary; * * * then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any such declaration or in case of any claim under this Policy, shall be limited to the return of premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company." (See plaintiff's Exhibit 1.)

This policy was subsequently indorsed: " Mar 4 1927 Proposed Beneficiary Harry Tennenbaum, Relationship — Son." (See plaintiff's Exhibit 1.)

On April 2, 1927, one Anna Abrhams — a daughter of the deceased — acting pursuant to the authority of the said Harry Tennenbaum (Stenographer's minutes, p. 12, lines 17, 18), delivered to one I. Levine, an agent of the company, certain papers consisting of the original policy, proof of death, claimant's statement

on form 65 signed by Anna Abrhams (plaintiff's Exhibit 3) and a physician's statement on form 66 signed by Dr. Schnapper (plaintiff's Exhibit 4).

In the statement of Dr. Schnapper submitted by Anna Abrhams on April 2, 1927, the cause of death is stated broncho pneumonia. Later, about April 19, 1927, the defendant, apparently *of its own initiative* and without any prior request or demand of or communication with the plaintiff or the said Anna Abrhams, sent its home office inspector Schoen to one Dr. Keschner and procured from him a physician's statement on form 66 in which Dr. Keschner states the deceased had been continuously ill with a chronic condition suffering from general and cerebral arteriosclerosis with residua of a hemiplegia sustained about five years ago (defendant's Exhibit 1). After defendant's home office inspector, Schoen, procured this statement from Dr. Keschner, *he*, and not the plaintiff or Anna Abrhams, turned it into the defendant company.

It is admitted that up to this time neither the plaintiff nor Anna Abrhams had anything to do with this paper (defendant's Exhibit 1) or the activities of the company in connection with its preparation or procurement and apparently they knew nothing about the same.

It is the defendant's contention that after this paper, defendant's Exhibit 1, had been secured and filed by Schoen in its office it was then taken by the defendant's agent Levine to Anna Abrhams and Levine procured her signature upon it. Levine's recollection as to what actually transpired or occurred on this vital instance, except possibly the signing of Anna Abrhams, is incomplete and sadly lacking. (Stenographer's minutes, pp. 10, 11.)

The plaintiff unqualifiedly repudiated this exhibit and disputes the authority of Anna Abrhams to execute or submit it on his behalf and Anna Abrhams denies that she ever signed the document.

Depending principally upon the force and vitality of this exhibit and its legal effect, the defendant claims there has been a breach of the policy condition referred to (Plaintiff's Exhibit 1, ¶ 3) and that the company properly declared the policy void and rejects the claim.

If Dr. Keschner's certificate, dated April 19, 1927 (Defendant's Exhibit 1), was voluntarily submitted on behalf of this plaintiff or adopted by him as a proof of death in support of his claim, pursuant to and under the policy, the defendant may prevail — otherwise it must fail. (*Rudolph* v. *John Hancock Life Ins. Co.*, 251 N. Y. 208; *Cirrincioni* v. *Metropolitan Life Ins. Co.*, 223 App. Div. 461; *Vecchio* v. *Metropolitan Life Ins. Co.*, 224 id. 301.)

At this time it is not simply and only a question whether one

believes the deceased had suffered from a serious illness for several years immediately preceding her death, but whether or not the evidence and testimony submitted on the trial is competent and sufficient to establish that fact, thereby avoiding liability on the part of the defendant upon this policy. The defendant, advancing this claim, is saddled with the burden of establishing it by a fair preponderance of the evidence. (*Spencer* v. *Citizens M. L. Ins. Assn.*, 142 N. Y. 505.)

" It is undoubtedly the general and well settled rule, in such cases, that the defendant is bound to establish, to the satisfaction of the jury, the defense that the policy has been avoided by some violation on the part of the insured of its conditions, and if the evidence which went to make up the plaintiff's case upon the trial, warranted any other inference as to the cause of death, than that stated in the certificate, it was error to dismiss the complaint." (*Hanna* v. *Conn. Mut. Life Ins. Co.*, 150 N. Y. 526, at p. 530.)

However, if Dr. Keschner's certificate (Defendant's Exhibit 1) was voluntarily submitted by Anna Abrhams as the authorized agent of Harry Tennenbaum, or if it was adopted by the plaintiff as a proof of death, the paper would then constitute an admission against the plaintiff's interest and such admission unexplained or uncontradicted would be controlling; *i. e.*, would become binding until explained or contradicted. (*Leonard* v. *John Hancock Life Ins. Co.*, 76 Misc. 529, 531; *Rudolph* v. *John Hancock Life Ins. Co., supra.*)

It is only on this theory that defendant's Exhibit 1 is to be admitted as competent evidence and accepted as controlling as an admission of and against the plaintiff. " It operates, however, as an admission by claimant that the facts are as stated." (*Rudolph* v. *John Hancock Life Ins. Co., supra*, at p. 214.)

Hence the origin and history of this paper should be carefully noted and weighed.

The execution of defendant's Exhibit 1 by Dr. Keschner was neither sought nor secured by the plaintiff or his agent, the company directly procuring it from Dr. Keschner. And the defendant concedes that only sometime after the defendant procured defendant's Exhibit 1, another agent than the one who originally obtained the paper from Dr. Keschner secured the alleged signature of Anna Abrhams to it. The query arises, if Anna Abrhams signed this paper, did the plaintiff or Anna Abrhams know and understand the contents of it?

Can it be urged that without any request or demand this certificate was knowingly and willingly filed or submitted as a proof of death on behalf of the claimant sometime after April 19, 1927 —

*in addition to those proofs already filed by the plaintiff on April 2, 1927.*

This is not a case where there is no other proof of death and hence the plaintiff must adopt this proof to establish compliance with the policy. The submission of defendant's Exhibit 1 could have been a gratuitous act of an agent, not binding on the principal. (*Buffalo Loan, Trust & S. D. Co.* v. *Knights Templar & M. M. A. Assn.*, 126 N. Y. 450.)

The company knew Harry Tennenbaum and not Anna Abrhams was the beneficiary. This situation in itself advised one of the agency of Anna Abrhams and presented a question of her authority plus the authority of Dr. Keschner to bind this plaintiff by such written admissions, assuming the certificates to have been secured and submitted by the plaintiff upon proper request.

The significance of this situation viewed in this light has been made the subject of judicial expression. (*Aldridge* v. *Ætna Life Ins. Co.*, 204 N. Y. 83.)

Were we to strip defendant's Exhibit 1 of its claim to adoption, or authenticity born of the alleged signature by Anna Abrhams, what have we left?

The paper is an unsworn document reciting confidential knowledge of a physician about his patient, whose identity aside from the recitals of the paper itself is unestablished.

The vital import of this evidence demands a greater precision and accuracy than that followed by the company in this instance.

While the short interval between the issuance of the policy and the demise of the insured could invite a degree of doubt and suspicion, yet the defendant was at all times duly apprised of its rights and of the legal requirements. It undoubtedly appreciated that to exercise one it must meet with the other. It must have known the standard by which it would have to be prepared to have its claims measured.

Mindful of the bitter controversy over this alleged signature of Anna Abrhams to defendant's Exhibit 1 and considering all the testimony, I do not believe this defendant has by a fair preponderance of competent evidence established the alleged breach of condition. I, therefore, find in favor of the plaintiff.

Ten days' stay after service of copy of the judgment and notice of entry.