## W. T. Waggoner et al. v. W. F. Snody.

Decided July 1, 1904.

**1.—Damages—Ownership of Personal Property — Parties — Apportionment of Damages.**

Where plaintiff sued in damages for injury to horses, and the evidence showed that the horses were in his control and possession, but that another person owned a part interest in them, the court correctly refused to charge that plaintiff could not recover, since defendants, having failed to interpose any plea of want of proper parties, were entitled to claim only that the damages should be apportioned.

**2.—Same—Apportionment—Charge.**

Where the evidence was undisputed that plaintiff's interest in the horses was about two-thirds, and that of one J. about one-third, with very slight evidence of some interest in one R., the court properly refused to instruct that plaintiff was entitled to recover only such proportion of the damages as would be equal to his interest, "and if there is no evidence tending to establish the amount of interest owned by each party, then the jury should find for the defendants."

**3.—Same—Right of Bailee to Recover.**

The right of a bailee in possession of personal property to recover in full for damages thereto, irrespective of ownership, as affirmed in prior unreported decisions of this court, is discussed, but the court as now constituted inclines to the view that the damages should be apportioned where plaintiff is only a part owner.

**4.—Evidence—Declarations of Agent—Abandonment of Lease.**

Where defendants sought to justify their action in turning plaintiff's horses out of a pasture he had leased, by setting up a prior lease of the land by plaintiff's lessor made through T., defendants' ranch manager, to one W., it was competent to prove statements of T. subsequently made to such lessor, showing an abandonment of such prior lease, although defendants were not present at the time.

**5.—Same—Sublease Without Consent.**

The admission of such statements of the agent, if error, was immaterial where defendants claimed under a sublease to them by W., and such sublease was made without the consent of the original lessor as required by the statute. Rev. Stats., art. 3250.

**6.—Same—Declaration of Agent.**

There was no error in admitting evidence of a declaration of defendant's agent, made while he was driving plaintiff's horses out of the pasture, that "if those horses are again found in this pasture, they will be scattered so that they will never be found."

**7.—Damages—Exemplary Held Authorized.**

Evidence considered and held to warrant a verdict for exemplary damages for turning plaintiff's horses out of a pasture, the act constituting a deliberate invasion of a known right.

Appeal from the District Court of Baylor. Tried below before Hon. J. M. Morgan.

*Hunter & Flood, Tolbert & Berry, Chas. E. Coombs,* and *Glasgow & Kenan,* for appellants.

*A. H. Britain, R. M. Ellerd, D. J. Brookerson,* and *Montgomery & Hughes,* for appellee.

CONNER, Chief Justice.—One Wyatt was the owner of two sections of land situated within a large inclosed pasture belonging to the

appellant Waggoner. Wyatt leased said two sections to appellee Snody, who thereupon placed within said pasture some sixty-two horses. Appellant C. I. Bedford, Waggoner's ranch boss, together with some hired hands, drove the horses out of the pasture, and appellee instituted this suit against Waggoner and Bedford for damages, actual and exemplary, for so doing. Appellee alleged that appellants conspired together to prevent the use of said two sections of land, and in fulfillment thereof, willfully, maliciously, and with a view of oppressing appellee, drove his said horses away and into wire fences and scattered them, whereby some were killed, some lost and many injured, in consequence of all which he was damaged in amount and in the particulars set forth in his petition.

Appellants pleaded the general denial, and specially that prior to appellee's lease Wyatt had leased said two sections of land to one Witherspoon, from whom appellant Waggoner had acquired right to use the same, and that the Witherspoon lease and appellant's said right were in force at all times involved.

The jury returned a verdict in appellee's favor for "actual damages $400, cost of gathering horses $63, exemplary damages $350," and the judgment from which this appeal has been prosecuted was rendered accordingly. The ninth, tenth, eleventh and twenty-first assignments of error present a question arising from evidence on the trial to the effect that appellee was not the sole owner of the horses in question. It appears that one J. J. Ellerd and appellee were joint owners, Ellerd owning an undivided interest of about one-third and appellee the remaining interest. Appellee, however, was entitled to and had the sole actual possession and control of all the horses. Because of this proof appellants, in special charges 1, 2 and 3, requested the court to peremptorily instruct the jury to find for defendants. These charges were refused and the court, at appellee's request, gave the following charge: "If you believe from the evidence that the plaintiff, under the charge of the court, is entitled to recover against the defendants, W. T. Waggoner and C. I. Bedford, you are instructed that the possession of said horses by the said plaintiff, Snody, is sufficient proof of title to authorize a recovery in his favor, and if you believe that the said plaintiff had possession of said horses, then you will find a verdict for the plaintiff." Appellant's proposition is that: "All the joint owners of personal property must unite in an action to recover damages for the value thereof or injury thereto, when wrongfully taken and converted or injured, and while possession alone is sufficient, perhaps, to entitle the plaintiff to recover, in the absence of any other evidence of ownership—inasmuch as possession implies ownership—yet this inference of ownership may be rebutted by other evidence, and if on the whole case it is proved that plaintiff is not the sole owner, but that others are joint owners with him, then the plaintiff can not recover. And the charges asked by defendants should have been given, and that given at request of plaintiff refused."

We do not think we can sustain the proposition under the circumstances of this case. Appellants at no stage of the proceedings presented a plea of "a defect of parties plaintiff," as required by Revised Statutes, article 1265, and the form of the action is not such as to imperatively require a total abatement of the suit or of appellee's claim, as contemplated by the proposition urged. The rule is thus stated in 1 Suth. on Dam., sec. 134: "* * * in actions of tort the nonjoinder of a party who ought to join as coplaintiff can only be taken advantage of by plea in abatement or upon the trial by an apportionment of damages." Citing Wright v. Bennett, 3 Barb., 451, not available to us, and White v. Webb, 15 Conn., 302, which supports the text. What was said by the Supreme Court of Wyoming in the case of Gilland v. Railway Co., 43 Pac. Rep., 510, also seems in point here. Say the court there: "A defect of parties plaintiff, if it appear on the face of the petition, may be taken advantage of by demurrer; if it does not so appear, the objection may be made by answer; and if no objection be taken either by demurrer or answer, the defendant is deemed to have waived the same. Rev. Stats. 1887, secs. 2449-2451; Hoop v. Plummer, 14 Ohio St., 448. At the time of the trial and verdict the defect of parties plaintiff, if any, had been waived by a failure to take advantage thereof by answer. At the common law such defect was reached by a plea in abatement, and it was the inflexible rule that advantage thereof must be taken promptly. It was regarded, and is still so regarded under the codes, as a dilatory defense. Prior to the trial defendant's counsel had information respecting the interest of another party. The fact that such knowledge was not complete, and the particulars thereof not known, may have been a sufficient excuse for not presenting the objection before trial, although we do not by any means regard that as altogether certain; but when the testimony of the plaintiff disclosed the facts upon which the defendant was willing to rely and maintain its proposition, the objection should have been made at that time, and application then made to amend its answer upon trial, setting forth the facts constituting the alleged defect of parties. Without such an answer, the instruction requested was erroneous, for the reason that, even if the evidence established a joint interest in another, the defect of parties being waived, the plaintiff could nevertheless recover to the full extent of his own interest, or, as it is frequently stated, his damages could be apportioned upon the trial. This principle is well settled, and may be said to be fundamental. Had the instruction permitted the plaintiff to recover to the extent of his interest, and denied his right to recover the amount of the interest of another who was a joint owner with him, it would have been a correct statement of the law, and it would have been improper to have refused it, if the evidence justified such an instruction, defect of parties having been waived."

We approve the view thus presented, and hold that by appellants' failure to make the effort, at least on the incoming of the evidence referred to, to cure the defect in parties plaintiff, they waived what at most in

this case was dilatory matter of which they could thereafter avail themselves only by seeking to have the damages properly apportioned.

This, however, but brings us to the next assignment as presented in the brief, which is to the action of the court in refusing the following special charge: "If you believe from the evidence that the plaintiff was only a part owner of said property, and that J. J. Ellerd and Reuben Ellerd, or either of them, was or were also part owners thereof at the time the horses were put out of the pasture, then you can only find for the plaintiff such proportion of the damages, if you find any, as shall be equal to his interest in such horses; and if there is no evidence tending to establish the amount of interest owned by each party, then you should find for the defendants."

It has been frequently held to be erroneous to submit to the jury as doubtful that about which the evidence leaves no doubt. The evidence fails to show the exact interest of the parties named in the special charge, but it is undisputed that the interest of appellee was about two-thirds and that of J. J. Ellerd about one-third, with almost if not an entire absence of any evidence of an interest in Reuben Ellerd. Appellants having waived their plea in abatement, the burden was on them to at least furnish prima facie proof of some interest in Reuben Ellerd before being in position to demand any relief on this ground, and it is by no means clear that it would not have been erroneous on the part of the court to have instructed the jury, as was the effect of the charge, to find against appellee entirely merely because the evidence failed to show the exact amount of J. J. Ellerd's interest and failed to show whether Reuben Ellerd had an interest, and if so, the amount thereof. But a more direct and perhaps satisfactory answer is to be found in the rulings of this court in unreported cause No. 2330, R. Patterson v. Lyon, Gribble & Co., decided May 9, 1895. In that cause the appellant, R. Patterson, sued to recover the value of certain household goods wrongfully converted by the appellees. It was shown that the goods in question in fact were owned by William Patterson, son of R. Patterson; that William Patterson had moved to Denison, leaving his household goods in the actual care and custody of his father, R. Patterson, during which time the goods were converted as alleged. The trial court held that because of the fact that William Patterson was the owner, R. Patterson could not recover, and hence found against him; but on appeal this court held, in a memorandum opinion by Tarlton, Chief Justice, that R. Patterson, as bailee of "property belonging to another, could maintain this action against appellees, naked trespassers, and recover the full value of the property," citing Smith v. James, 7 Cowen (N. Y.), 326; Marsden v. Cornell, 62 N. Y., 221; Mechem on Agency, 765, and cases there cited, and accordingly reversed and rendered the judgment in favor of R. Patterson. The above decision appears to have been subsequently approved in its entirety by a majority of the court on December 5, 1896, in cause No. 2474, of the McCormick Harvesting Co. v. H. Timmons, who was in the actual possession of certain horses owned

by one Corriden, for which he was liable to the owner, and the majority of the court, including the distinguished counsel for appellant who presented this cause before us, held that he was entitled to recover the full value of the Corriden horses which had been converted by wrongful attachment; Stephens, Associate Justice, however, expressing view to the effect that the damages should have been apportioned. We have been cited to no case in direct conflict with these decisions, which should therefore doubtless be binding upon us until it has been otherwise authoritatively determined; although the court as now constituted incline to the view expressed by Justice Stephens in the Timmons case, supra, and indicated by authorities cited earlier in this opinion. The verdict fixes the status of appellants as that of trespassers, and appellee Snody was undoubtedly part owner and bailee of the horses in controversy, and liable to J. J. Ellerd for whatever interest he had in them, and presents a stronger case of right for the recovery of the entire damage than was presented in either of the cases last above cited, so that on the whole we think we should overrule all assignments raising the questions hereinbefore stated.

In the fifth, sixth, seventh and eighth assignments it is urged that the court erroneously admitted certain testimony. Wyatt, the owner of the land in controversy, testified that the consideration for the lease to Witherspoon was that the latter should pay all taxes and interest on purchase money due the State; that there having been a failure to do this, he, Wyatt, went to Will Taylor, Witherspoon's ranch boss, complaining thereof, whereupon Taylor stated that "W. T. Waggoner was to pay the taxes on the lands, and if he has not done it, you can take possession of your land." Other witnesses were permitted to testify that Harve Lawson, who was one of appellant Waggoner's employes, stated while driving appellee's horses out of the pasture, "that if these Snody horses were again found in this pasture, they will be scattered so they will never be found."

The principal objection to the statement of Will Taylor as above quoted is that it was not shown that he had authority to cancel the Witherspoon lease and return possession of the two sections of land in controversy to Wyatt. It is also objected to as hearsay, which latter objection is urged to the statement of Harve Lawson, it having been shown that neither of appellants was present at the time these statements were made. We think, however, that the evidence tends to show authority in Taylor. See Burnett v. Oechsner, 92 Texas, 588, 50 S. W. Rep., 562. As stated, he was ranch boss and general manager for Witherspoon, and negotiated the lease with Wyatt upon which appellants rely. The evidence relating to this matter further shows that Taylor, for Witherspoon, and Witherspoon, ceased paying taxes and interest from the time of the contract with Waggoner upon which appellants rely. There is nothing in the evidence showing that Witherspoon ever thereafter exercised any control, save that Taylor, his ranch boss, and employes continued from time to time to gather and drive out cattle of Witherspoon's

not included in the sale to Waggoner that remained in the pasture. And we think it was competent to show a right in the owner to treat as he did the Witherspoon lease as no longer in force, and to thereafter, as he also did, lease the lands to appellee. But if the evidence on the issue of abandonment be deemed incompetent or insufficient, it seems immaterial in that it otherwise appears that the contract with Witherspoon for the use of the land in the Witherspoon pasture upon which appellants rely was in substance a sublease of the same and therefore in direct violation of Revised Statutes, article 3250, which declares: "If lands or tenements are rented by the landlord to any person or persons, such person or persons renting such lands or tenements shall not rent or lease said lands or tenements during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney." The proof undoubtedly shows that after the purchase of Witherspoon's cattle the fence dividing the Witherspoon pasture from that of appellant Waggoner's was removed, so that the two pastures thereafter constituted a whole. Appellant Waggoner testified, in substance, that he thereafter had the same use and control of the Witherspoon pasture that he did of his own, and it seems to us, in all substantial respects, controlled the lands, as contradistinguished from the mere use of the same for grazing purposes, as fully as if a formal lease contract therefor had been made. The lease to Witherspoon also forbade a subleasing of the Wyatt land, and we think in the light of the whole testimony that Wyatt was authorized to resume possession of his lands and to thereafter lease the same as he did to appellee. The objection that the declarations were hearsay is evidently not tenable so far as it relates to Taylor's declarations. That was relevant and competent upon the issue of abandonment, as we have held, and therefore is not hearsay within the meaning of the rule invoked.

We have had some hesitation in sustaining the action of the court in overruling the objection to Harve Lawson's statements, as we have quoted them above, but have finally concluded to do so. "Where the acts of the agent will bind the principal, his declarations, and admissions respecting the subject matter will also bind him, if made at the same time, and constituting part of the res gestae." Story on Agency, sec. 134; Mechem on Agency, sec. 714; Greenl. on Ev., sec. 113; Rogers v. McCune, 19 Mo., 558; Robertson v. Walton, 58 Mo., 384; Railway Co. v. O'Brien, 19 U. S., 99; Standefer v. Aultman & Taylor Mach. Co., 34 Texas Civ. App., —, 78 S. W. Rep., 552; Cooper Grocery Co. v. Britton, 74 S. W. Rep., 91; Railway Co. v. Zoutzinger, 53 S. W. Rep., 379; Houston & T. C. Ry. Co. v. Bowen, 36 Texas Civ. App., —, 10 Texas Ct. Rep., 493.

The proof is unquestioned that appellant Waggoner gave explicit directions to drive all horses and cattle out of the pasture involved, and that Harve Lawson, together with appellant Bedford, pursuant to such instructions drove appellee's horses as alleged. The authority of Harve Lawson to so act for appellants pursuant to their specific directions is not

questioned. The declarations made by him were so made while actually engaged in the performance of his duty. It does not appear that he had any personal interest whatever in driving appellee's horses from the pasture or in keeping them out, and his declaration seems to have been intended as in the interest of the master and in furtherance of his (Lawson's) duty. As it was doubtless intended, the tendency thereof was to restrain the appellee from returning the horses to the pasture, and hence, as stated, seems reasonably to have been intended in the interest of appellants, and if so, appellants are bound by the statements. If the servant be acting within the scope of his authority, the fact that in the performance of his duty he acted without instructions or violative of instructions or even commits a crime, will not excuse the master. In such case the master must bear responsibility for the servant's wrongdoing. Houston & T. C. Ry. Co. v. Bowen, 36 Texas Civ. App., —, 10 Texas Ct. Rep., 493.

The remaining contention that has been the subject of some hesitation on the part of some of us is that the evidence did not authorize the submission of the issue of exemplary damages, and that it does not support the verdict and judgment thereon in appellee's favor. It has been finally concluded, however, that we can not disturb the result of the trial on this ground. Appellant Waggoner testified that "when I bought the cattle from Witherspoon and began to work the pasture I knew the lands were leased by Witherspoon, and after that time I tried repeatedly to lease or buy the lands from Wyatt. I at one time offered him $2.75 per acre bonus for the lands. The land was worth less than $1 per acre. I also instructed Mr. Bedford to lease the lands from Wyatt and pay him 10 cents per acre for the lands. This was twice as much as the land was worth for grazing purposes. I was leasing the same kind of land in that vicinity for 5 cents per acre. I offered to buy this land or lease it to save any trouble with Wyatt. * * * ' C. I. Bedford was my ranch manager, and he had full authority to manage and control for me said pasture. * * * I had the same possession of the Witherspoon pasture that I had of my own lands, which were thrown into the same inclosure. * * * I gave defendant Bedford instructions to turn out of said pasture all cattle and horses found in said pasture that did not belong to me or P. S. Witherspoon. I never did tell him to turn out plaintiff's horses. I did not know there was such a man, * * * or that he had any horses in the pasture at that time."

C. I. Bedford testified that pursuant to Waggoner's instructions he, with employes, drove appellee's horses out of the pasture about September 25, 1902, and further that: "Waggoner had instructed me to turn everything out of the pasture as above stated except his and Witherspoon's cattle, and I instructed the men working under me to turn out all except said cattle. * * *. Waggoner never knew anything about Snody's horses so far as I know until I put them out and told him what I had done. He never made any objection to what I had done and I have been working for him ever since. * * * I remember talking

to Wyatt once at my house, in which conversation I offered to lease or buy these lands.   *   *   *   Before I put out the Snody horses I had heard that he was claiming the right to pasture the horses under a contract with Wyatt.   *   *   *   I knew before I put the horses out that Wyatt claimed this land in the pasture, and that Snody claimed the contract with Wyatt to pasture it."

G. F. Wyatt testified, among other things, as follows: "About May or June, 1902, I had a talk with C. I. Bedford, in Seymour, Texas, about my land. He first wanted to buy my lands, but we could not agree on the price; he then offered to lease the land, and asked me what I would take. I offered to lease them to him for $100 per section per year, and he thought that was too much, but said he would do as well as Witherspoon had been doing. I would not accept that proposition, but told him that grass was now much scarcer and worth more than when the Witherspoon trade was made. Defendant Bedford then said to me, 'They say we are pretty tough, but I guess you can stand us.' *   *   *   After this time I talked with Bedford over the phone about the sale and lease of these lands; he said again either that we are pretty tough, or they say we are pretty tough. When I talked with him over the phone I told him that I had let Snody put his horses in the pasture and wanted them to stay there. This conversation occurred while the horses were in the pasture." We think this evidence tends to show a deliberate invasion of a known right in appellee that authorized the imposition of exemplary damages, and that appellant Waggoner is equally liable with appellant Bedford, having ratified all of the latter's acts.

We think the evidence almost if not entirely conclusive that the contract with Waggoner for the lands in question was substantially a sublease of the same as contradistinguished from a mere right to graze cattle thereon, and hence that there is no substantial error in the court's charge on the issue of abandonment. The charge on the measure of damages and in other particulars objected to, when applied to the evidence, we also think substantially correct, and finding that the appellee's petition is supported by the evidence in all of its material allegations, the judgment is affirmed.

*Affirmed.*

Writ of error granted; judgment reversed and remanded, 98 Texas, —.