T. P. WEATHERRED ET AL. v. MRS. FANNIE FINLEY.

Decided July 3, 1909.

**1.—Conspiracy—Evidence—Charge.**

In a suit for damages for conspiracy to swindle, it is the duty of the trial court to tell the jury that although evidence of the conspiracy had been introduced, still it was the right of the jury to determine whether in fact a conspiracy had been established, and if not established, then not to consider the acts and declarations of any one defendant as evidence against his codefendant. Charge upon such issue considered and approved.

**2.—Same—Consummation.**

A conspiracy to defraud in the sale and purchase of land is not necessarily consummated when the deeds are executed. If the original purpose of the conspirators contemplate other consequent and subsequent transactions then the conspiracy was not completed in all its parts until those were done. Rule illustrated.

Appeal from the District Court of Midland County. Tried below before Hon. Jas. L. Shepherd.

*Caldwell & Whitaker, J. W. Moffett* and *Cunningham & Oliver* and *Theodore Mack,* for appellant.

*A. S. Hawkins,* for appellee.

CONNER, CHIEF JUSTICE.—Appellants T. P. Weatherred, W. A. Meador and J. N. Porter have appealed from a judgment against them in appellee's favor for the sum of twenty-nine hundred and ninety-four dollars. Appellants have severally presented briefs assigning various errors, most of which are common to all, but we think it sufficient to say in answer to the assignments of appellants Weatherred and Meador that the case made against them by both appellee's pleading and evidence is that of a simple swindle, in which both alike acted in the accomplishment of a certain purpose to appellee's damage.

Appellee alleged among other things in substance that she was a widow residing in Abilene, desirous of investing in western lands; that appellant Weatherred was engaged in the real estate business in the town of Midland, and that he agreed to act for her as her agent and to advise her in making investments and to procure for her lands at the lowest possible prices, giving her the benefit of his long experience and in all things else to faithfully represent her and protect her interests; that appellants Meador and Porter jointly and severally, and with full knowledge of the fact that said Weatherred was plaintiff's trusted agent, induced Weatherred to disregard his duty to plaintiff and induced him to enter into an unlawful combination and conspiracy for the purpose of defrauding and swindling her; that the appellants jointly and severally represented to her that W. A. Meador was at the time the owner of a large body of land consisting of four sections in block thirty-nine, which he was extremely anxious to sell; that said defendants represented that Meador had purchased said land prior thereto for the sum of thirteen thousand dollars, since which

time real estate values in that portion of the State had advanced; that Meador was desiring to move to a different part of the State and engage in other business, and that his wife was in exceedingly bad health, and for this and other reasons he would sell said lands to plaintiff for the sum of fifteen thousand three hundred and sixty dollars; that Weatherred and Meador, with the connivance and consent of their co-conspirator, Porter, represented that said land at the price named, to wit, fifteen thousand three hundred and sixty dollars, was a great bargain for plaintiff; that said price was the lowest possible price for which said land or other land of like character could be purchased, and that the same was really worth vastly more than the sum of fifteen thousand three hundred and sixty dollars. Plaintiff charged that said representations were false, but that nevertheless she, relying thereupon, agreed to purchase the lands, after which Meador and Weatherred bought the land from the real owner for the sum of five thousand one hundred and twenty dollars, which was not more than its real value, taking deed thereto in the name of Meador, and then transferred the same to plaintiff for the sum of fifteen thousand three hundred and sixty dollars, which she paid in cash and notes in ignorance of the true facts.

Appellee's testimony fully supported her allegations in respect to the representations and acts of appellants Weatherred and Meador, and, if believed by the jury, which was evidently done, it is immaterial whether Weatherred in representing and acting as he did was Meador's agent or that of appellee. It is likewise immaterial that there was a conspiracy between Meador and Weatherred. Both by allegation and proof they jointly and severally made false representations and jointly and severally acted in the accomplishment of the swindle, and there was no error therefore in the court's action in refusing special instructions to the effect that if Porter was not a party to the fraud, or had not conspired, or if Weatherred was not appellee's agent, that the jury should find for appellants.

All appellants urge that the court erred in giving the following portion of paragraph three of the general charge to the jury, viz.: "The court has admitted before you evidence of facts and declarations of J. N. Porter and W. A. Meador, only upon the theory that they were co-conspirators with T. P. Weatherred, but the action of the court in admitting this evidence means only that sufficient evidence of a conspiracy was offered to permit the evidence to go before you." It is objected that this charge is upon the weight of the testimony and indicated to the jury that in the opinion of the court the evidence on the issue of conspiracy was sufficient. We are of opinion, however, that no error was committed in this respect. Reading paragraph three as a whole, it clearly appears that the issue of conspiracy was left solely to the jury's determination. Immediately following the words quoted, without punctuation or break in the sense, the charge reads: "Because it is for you alone to determine upon the facts in evidence whether there was any conspiracy." It was the evident purpose of the paragraph to merely explain the circumstances under which the jury might consider or not certain acts and declarations of named conspirators. In the case of Luttrell v. State, 31 Texas Crim., 493, a

judgment assessing the death penalty for murder was affirmed, and in that case objection was made to a charge almost identical with that above quoted, the only change being in words necessary to its adaptation in this case. It was there said that: "It was the duty of the judge to tell the jury that, though he had received the evidence (acts and declarations of conspiracy), yet they had the right to determine whether in fact a conspiracy had been established, and if not established not to consider as evidence against appellant the acts and declarations of Carlisle, Fogg and Poe. The duty was performed in plain and simple language, which could not have been misunderstood by the jury." The assignment under consideration is overruled.

The appellant Porter assigns error to the court's refusal to give the following special instruction: "In this case the defendant Porter is charged in plaintiff's pleadings with having conspired together with defendant Meadows and defendant Weatherred in selling to the plaintiff the four sections of land described in plaintiff's pleadings. This transaction was completed when the deeds were made to the four sections of land to Mrs. Finley on July 10, 1907. Now, if you find from the evidence that the defendant Porter was during the time of the making and completing of said sale of said land at his ranch in Crane County, and that he was not present when said sale was made, and that he did not see or talk with the plaintiff Mrs. Fanny Finley, or defendant Meadows, or defendant Weatherred during the time when this trade was being made and consummated, and that he had nothing to do with said transaction, then you will find a verdict for the defendant Porter, and the fact that said defendant Porter afterwards purchased Mrs. Finley's houses in Abilene from her or from her agent would in no wise make this defendant liable in this suit for anything whatever."

While in the court's general charge the jury were authorized to find a verdict against appellant Porter in event only of a finding that he had conspired together with Weatherred and Meador, there was no affirmative direction to find in Porter's favor in event the jury found that he was not a party to the conspiracy. There is no objection, however, to such omission, and the assignment objecting to the special charge above quoted must be overruled. As a part of the appellee's evidence offered on the issue of conspiracy, she testified that at the time of the Midland purchase she insisted that she would be unable to complete it unless she could sell some Abilene property, and that Weatherred assured her that it could be sold to Porter; that Porter was interested, had been there and so told him, etc.; that after the completion of the Midland sale Porter in fact did purchase the Abilene property. The special charge, therefore, we think was upon the weight of the testimony in instructing the jury that the "transaction was completed when the deeds were made to the four sections of land to Mrs. Finley on July 10, 1907." And was further objectionable as tending to lead the jury to disregard or minimize the weight to be given to the fact of Porter's subsequent purchase of the Abilene property. If as a material part of the original purpose of the conspirators the purchase of appellee's Abilene property was to be made by Porter, then the

"transaction," viz., the conspiracy, was not completed in all of its parts until that was done.

Appellant Porter further earnestly insists that the evidence fails to support the judgment against him, and that a requested peremptory instruction in his favor should have been given. We have finally concluded, however, that we can not sustain the contention. It is true that aside from declarations of Weatherred there is no direct testimony that Porter had any connection with the fraudulent acts charged prior to the time when the Midland sale to appellee was completed by the execution and delivery of transfers, etc. But there is no dispute of the fact that after the Midland sale Porter purchased appellee's Abilene property, and in doing so was permitted to use as part of the purchase price to be by him paid twenty-five hundred dollars of the notes appellee had given to Meador in the Midland transaction. While Porter testified that he refused to give more than three thousand dollars for the Alibene property, and that the notes were secured by Weatherred, to whom he paid therefor fifteen hundred dollars in cash, and Weatherred, Meador and Porter all testified that Porter had no connection with the Midland deal, there is much evidence on the part of appellee and of her daughter showing that soon after the Midland sale she became dissatisfied, and that Porter engaged actively in the effort to have the complaint adjusted. She testified that among other things Porter said to her: " 'Now, Mrs. Finley, . . . you come on up here and I will see that you get some money.' I had made complaints previous to that time about money. I was after them all the time. I was writing them and seeing them in person all the time. . . . He (Porter) says: 'Well, let Tom Weatherred go and I will see that you get your property and money back as good as you had before.' He would personally see that I got my property and money back. . . . He (Porter) said that he and Weatherred were going out to see Meador. He didn't say that Weatherred was going to do anything. He said that he would see that I got the money." There was other testimony of like effect, and the whole, we think, was in the nature of an admission on Porter's part that he had been interested in and a party to the transaction. His frequent and intimate conferences with Weatherred, his ability to control a part of the proceeds of the fraudulent sale, and his evident earnestness to effect a settlement, all at least tends to prove appellee's charge of conspiracy. True, the testimony was susceptible of an explanation consistent with his innocence and his case may be but a modern illustration of the fabled story of "Poor Dog Tray," but it was for the jury to adopt that construction of the evidence that seemed to them most consistent with the truth, and having found against appellant Porter on the issue, we do not feel that we can disturb their verdict.

All assignments are overruled and the judgment affirmed.

*Affirmed.*

Writ of error refused.