## OLIVER et al. v. HUCKINS et al.* (No. 10024.)

(Court of Civil Appeals of Texas. Fort Worth. July 1, 1922. Rehearing Denied Oct. 14, 1922.)

1. Appeal and error ⬯187(3)—Nonjoinder of parties in action for conspiracy sounding in tort not error, in absence of .proper plea in abatement.

In an action for conspiracy, inducing plaintiffs to subscribe for interest in oil lease by means of false representations, the failure to make certain subscribers parties to the action was not ground for reversal, where the question was raised for the first time on appeal. since the action was sounded in tort, and any nonjoinder of parties should have been raised by a proper plea in abatement.

2. Parties ⬯84(2)—Nonjoinder of parties in tort must be raised by plea in abatement.

In an action sounding in tort, nonjoinder of parties must be raised by proper plea in abatement; and, where the question is not so raised, it will not be considered for the first time by the appellate court.

3. Conspiracy ⬯19—In action for conspiracy inducing purchase of interest in lease, evidence held to sustain finding that all persons who had purchased interest were parties to the action.

In an action for conspiracy inducing plaintiffs to subscribe for interest in oil lease by means of fraudulent representations, in which it was claimed by defendants on appeal that the plaintiffs erred in not joining certain other subscribers, evidence held to sustain finding that, though such persons made subscriptions, they had never paid the amounts subscribed, and that the full consideration for the purchase of the interest in the lease was paid by the parties to the action.

4. Conspiracy ⬯19—Proof of express agreement between alleged conspirators not essential to proof of existence of conspiracy.

In an action for conspiracy inducing plaintiffs to purchase interest in oil lease by means of fraudulent representations, it was not necessary in proving the conspiracy to show an express agreement between defendants, but the existence of a conspiracy could be inferred from acts of the defendants, done pursuant to an apparently criminal or unlawful purpose in common between them.

5. Conspiracy ⬯13—All of conspirators need not have been present when fraudulent representations were made by some of them pursuant to conspiracy.

In action for conspiracy, inducing plaintiffs to purchase an interest in oil lease by means of fraudulent representations, it was not necessary to show that all of the defendants were present at each of the times when fraudulent statements and representations were made to the plaintiffs.

6. Conspiracy ⬯13—Conspirators liable for acts and words of coconspirators in furtherance of the conspiracy.

Where the fact of the conspiracy has been established either by direct or circumstantial testimony, each of the conspirators is liable for the acts and words of each of the other conspirators, in furtherance of the common purpose, until the purpose of the conspiracy has been consummated.

7. Contracts ⬯94(5)—Fraudulent representations to vitiate contract need not have been the sole inducement.

To avoid a contract for fraud or misrepresentation, the fraud need not have been the

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction November 15, 1922.
244 S.W.—40

sole cause of making the contract, but it is sufficient if the fraudulent representation was relied on to the extent that it was a material factor in inducing the making of the contract, and without which the contract would not have been made.

**8. Conspiracy ⬥19—Evidence held to prove conspiracy to induce plaintiffs to buy oil lease by means of fraudulent representations.**

In an action for conspiracy to induce plaintiffs to buy an interest in an oil lease by means of fraudulent representations, evidence *held* to prove the conspiracy.

**9. Principal and agent ⬥115(1) — Principal bound by information given by agent to whom third party has been referred by principal.**

Ordinarily, where a principal directs a person to go to his agent for information, the principal is bound by the information given by the agent upon the subject referred to him.

**10. Principal and agent ⬥115(1)—One who refers another to a third party for information bound by information so given.**

One who refers another to a third party for information as a person authorized to speak on his behalf is bound by the information so given.

**11. Equity ⬥65(3)—Maxim that, "He who comes into equity must come with clean hands," relates to transaction involved.**

The rule that, "He who comes into equity must come with clean hands," means that, in the transaction out of which the litigation arose, the one seeking affirmative relief against another must not have been guilty of unfair dealing or wrongdoing in that transaction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Clean Hands.]

**12. Equity ⬥65(3)—Maxim, "He who comes into equity must come with clean hands," held not to preclude purchasers from recovering against vendor because of purchasers' conspiracy to defraud third persons.**

Purchasers of interest in oil lease were not precluded by conspiracy to induce third persons to purchase such interest by means of fraudulent representations from recovering damages from vendor for fraud, notwithstanding rule in equity that, "He who comes into equity must come with clean hands," since such rule requires clean hands merely as to the transaction as to which the relief is sought.

**13. Indemnity ⬥13(1) — Defendants, being sued for conspiracy to induce plaintiffs to purchase interest in oil lease by means of fraud, could not in same action recover over against their vendor on ground of fraud.**

In an action for conspiracy to induce plaintiffs to purchase interest in oil lease by means of fraudulent representations, the defendants could not in such action recover over against their vendor for fraud, since vendor's liability to defendants was not dependent upon or measured by any recovery by the plaintiffs against defendants.

On Motion for Rehearing.

**14. Conspiracy ⬥11—Plaintiffs could recover for conspiracy to induce purchase of interest in oil lease by false representations, though by diligence they might have discovered their falsity.**

If defendants conspired to induce plaintiffs to purchase interest in oil and gas lease by means of fraudulent representations, and the plaintiffs in reliance on representations purchased interest in lease, they were entitled to recover in an action for conspiracy, though by exercise of ordinary diligence they might have found out the truth, and that such representations were false.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by L. W. Huckins and others against Harry E. Oliver and others, in which W. A. Duringer intervened, and in which the defendants filed a petition to make T. B. Hoffer a defendant, and filed a cross-action against Hoffer. Judgment for plaintiffs and intervener against original defendants and for original defendants over and against defendant Hoffer, and original defendants and defendant Hoffer appeal. Judgment for original defendants over against defendant Hoffer reversed, and cause remanded, and judgment for plaintiffs and intervener against original defendants affirmed.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, for appellants Oliver, Evans and McDonald.

R. M. Rowland, of Forth Worth, for appellant Hoffer.

Goree, Odell & Allen, of Fort Worth, for appellees.

BUCK, J. L. W. Huckins, George W. Birchfield, C. C. Coleman, E. T. Renfro, and R. E. Winger filed suit against Harry E. Oliver, J. P. Evans, and George A. McDonald for the recovery of $13,000, paid by the plaintiffs to the defendants, as follows: L. W. Huckins, $5,000; George W. Birchfield, $5,000; E. T. Renfro, $1.000; R. E. Winger, $1,000; and C. C. Coleman, $1,000.

By an amended petition, plaintiffs alleged that W. A. Duringer and G. C. Robinson were also subscribers in the enterprise hereinafter explained, and asked that they be made defendants. By subsequent pleading, W. A. Duringer filed his plea of intervention, setting up the fact that he had subscribed and paid $2,500 to the defendants. Plaintiffs and intervener alleged: That on or about the 1st day of June, 1919, T. B. Hoffer owned and controlled a certain interest in and to an oil, gas, and mineral royalty in, upon, and under a certain tract of land situated in Wichita county, Tex., containing 80 acres, and described as the east one-half of block No. 58 of the Red River Valley lands, situated in said county. That on or about said date T. B. Hoffer had offered to

sell to the defendant George A. McDonald. a certain interest in said royalty and in said lease, consisting of a one-half interest in and to a ⅛ interest in and to a 1/24 carried interest in said lease for the sum of $20,000, and had authorized the said defendant McDonald to sell said interest in said lease and royalty as the agent of the said T. B. Hoffer at and for said sum of $20,000. That thereupon the defendants conspired and agreed among themselves to sell to the plaintiffs and to various and divers other persons whose names are unknown to the plaintiffs, except as hereinafter alleged, said interest in said lease and royalty for the sum of $30,-000, by means of certain false and fraudulent representations to be made to plaintiffs and to said other persons, in substance as follows: That it was agreed by said defendants that they would represent to the plaintiffs and to said other persons that the said Hoffer had offered and agreed to sell said interest in said lease and royalty for the sum of $30,000, and that it would cost said amount to procure said interest in said lease and royalty from the said Hoffer. That said defendants would represent to the plaintiffs and said other persons that Oliver and Evans would join with the plaintiffs and such other persons as might be induced by the plaintiffs and said defendants to join with them in the enterprise, upon the strength of such representations and statements of the defendants, in the purchase of said interest in said royalty for $30,000. That Oliver and Evans each would subscribe the sum of $5,000 to a fund to purchase and procure said interest in said lease and royalty at $30,000, but that in truth and in fact it was at said time the design and scheme of the defendants, jointly and severally, to obtain and purchase said interest in said lease and royalty from said Hoffer for a sum not exceeding $20,000 in cash, to be paid out of the amount to be procured by them from the plaintiffs and other subscribers to said fund. That neither of said defendants should in fact pay any portion of the purchase price thereof, but that the defendants should and would procure and retain for themselves an interest of not less than ⅛ of said interest in said lease and royalty, and should in addition thereto receive from the said Hoffer a commission for making the sale of said lease and royalty interest to the plaintiffs and other subscribers to said fund. That thereafter the defendants and each of them approached L. W. Huckins and George W. Birchfield and made to them the statements and representations that the interest in the said royalty then owned by Hoffer could be purchased for the sum of $30,000 in cash, and that it would be necesary to raise and procure said sum in order to procure said interest. That said defendants Oliver and Evans had each subscribed and that they each would pay the sum of $5,000 for said purpose, and would be and become jointly interested with the

plaintiffs in said purchase of the royalty interest. That all of the plaintiffs who subscribed to this enterprise, including the defendants, would become joint owners of the royalty interest, and would share in the profits derived therefrom according to the amount of their several subscriptions, and that no commissions or promotion fees were being paid or would be paid in connection with the said transaction, and no stock or interest therein issued, or delivered, by reason of any commission or promotion fee whatsoever. That said tract of land above referred to had on it at that time three oil wells, producing approximately 2,100 barrels of oil per day. That at the then rate of production from said wells the interest in the royalty to be purchased would produce approximately 4,800 barrels annually, and at the present price, to wit, $2.25 per barrel, the annual income from said wells would be approximately $10,704, and that said amount would be approximately 30 per cent. interest per annum on an investment of $30,000.

Similar allegations were made with reference to the representations made by the defendants, or some of them, to the other plaintiffs and intervener, Duringer. It was alleged that said statements were relied on by the plaintiffs and the intervener, and believed to be true, while in truth and in fact said statements were false in the following respects: (1) That the defendants were not paying anything for their interests in said royalty to be purchased; (2) that the wells on said land were not producing an amount even approximating 2,100 barrels daily, but a much smaller amount; (3) that the defendants were not paying to Hoffer $30,000 for said interest in the said royalty, but were paying him a much smaller sum, to wit, $17,-500.

The defendants answered by way of a general demurrer, a general denial, and certain special exceptions, and specially pleaded that they had been imposed upon by T. B. Hoffer, in that said Hoffer had made a statement to defendant McDonald that said Wells were producing approximately 2,100 barrels daily; that there were 14 other wells in process of drilling on said tract of land, and that the royalty was very valuable and worth a great deal more than the said T. B. Hoffer was willing to take therefor, and that the production then flowing from the three wells already drilled on said land would pay large returns upon the investment, and that the royalty interest in said producing three wells would amount to approximately 4,800 barrels of oil per annum, and, giving full faith and credit to the representations and statements of said Hoffer, the defendants purchased from the said T. B. Hoffer said interest in said oil and gas lease, and paid him therefor $17,500 in cash, and thereafter sold and conveyed the same to the plaintiffs in this cause; that the defendants would not have purchased the oil and gas leasehold in-

terest from the said T. B. Hoffer and paid him the money therefor, except for the fact that they had confidence in the statements and representations of the said Hoffer with respect to the amount of oil that was being produced from said three wells, and the said Hoffer assured them that said representations and statements so made by him to them with reference to said production was obtained by him from the pipe runs showing the amount of oil that was actually produced daily from the three wells; that the defendants are not able to say whether or not the representations so made to them by the said Hoffer were in fact true or untrue at the time they were made, but that the defendants do say that they relied implicitly thereon, and in pursuance hereof represented to the plaintiffs that said wells were making the production claimed by the said Hoffer to them. The defendants prayed that the said Hoffer be cited as a party defendant, and that, in the event the plaintiffs recover against the first three defendants, they have judgment against Hoffer for any sum or sums of money which the plaintiffs might recover against them.

Plaintiffs further alleged that the defendants Oliver and Evans had been known by the plaintiff Huckins for some time prior to the time said statements and representations were made, and that the personal relations between Huckins and the two defendants were friendly and cordial, and that thereby said Huckins was caused to place confidence in said statements made by said Oliver and Evans, and to vouch for the integrity and truthfulness of said defendants, and to thereby cause and induce the other plaintiffs and other parties who were not acquainted with the said Oliver and Evans to subscribe to said fund and pay the said subscriptions.

Said Hoffer answered by a general demurrer and a general denial.

The case was tried before the court without the aid of a jury, and a judgment was rendered that the plaintiffs and intervener recover against the defendants severally and jointly the respective amounts which the plaintiffs had subscribed to the fund, Dr. W. A. Duringer having subscribed $2,500, and that J. P. Evans, Harry E. Oliver, and G. A. McDonald, the defendants, have judgment over and against the defendant T. B. Hoffer for the amount adjudged against Oliver, Evans, and McDonald in favor of the plaintiffs and intervener, to wit, $15,500; that the transfer and assignments by T. B. Hoffer to George A. McDonald and the transfers and assignments by McDonald to plaintiffs and Duringer be canceled; that George C. Robinson, who it appears was a brother-in-law of McDonald, recover nothing. The defendants McDonald, Evans, and Oliver have appealed, and also T. B. Hoffer has appealed from the judgment over against him.

We will first consider the appeal of defendants Oliver, Evans, and McDonald. The first proposition is that there is fundamental error apparent from the face of the record in this case, and that "the undisputed evidence shows that Ike A. Wynn and A. W. Duncan are interested in the subject-matter of this suit to the extent of $1,000 interest each in the leasehold estate in controversy, and the judgment entered herein undertakes to adjudicate their rights and cancel the lease and assignments under which they hold without said parties, or either of them, having been made parties to this suit, and without an appearance having been entered herein for them, or either of them.

The court found that Ike A. Wynn and A. J. Duncan originally subscribed $1,000 each for the purchase of said lease, but that said amounts were never paid by them, but the full consideration for the purchase of said lease was paid by the parties to said suit. Harry E. Oliver testified:

"Mr. Ike A. Wynn subscribed $1,000 to this proposition, and I paid the $1,000 for him. I also paid $1,000 for Mr. Duncan. I paid that either to George McDonald or to Mr. Hoffer, but the check for Mr. Duncan went to Mr. Hoffer. Mr. George W. Birchfield paid $5,000; L. W. Huckins, $5,000; Dr. Duringer, $2,500; Mr. Renfro, $1,000; Mr. Coleman, $1,000; Mr. Winger $1,000; Mr. Wynn, $1,000; and Mr. Duncan, $1,000—which makes a total of $17,500. The $1,000 each that Mr. Evans and I put in was for Mr. Renfro and Mr. Coleman. We got ours back from Mr. Renfro and Mr. Coleman. Mr. Wynn did not actually pay $1,000 to me, but Mr. Duncan did. I don't know anything about Mr. Robinson's $1,000. I didn't agree to cancel Mr. Wynn's subscription for $1,000."

Defendant J. P. Evans testified:

"Mr. Huckins said he would take $5,000 in the syndicate, and Mr. Birchfield said he would take $5,000, and whenever we wanted money to call on them for it, and it would be ready. We left Mr. Huckins' office, and went back and told Mr. McDonald that we had $10,000 already subscribed, and the three of us would get busy and get more subscriptions to the proposition. In the meantime, Oliver got Dr. Duringer and Mr. Ike Wynn and Mr. Duncan interested. * * * The interest of Ike A. Wynn in this deal is still there; he just didn't care to join on the suit as I understand it. I think Mr. Oliver put up Mr. Wynn's $1,000, or in some way he furnished that for him, but I don't know how it was."

[1-3] This being an action sounding in tort, any nonjoinder of parties must have been raised by a proper plea in abatement, and, not having been so raised in this case, and being raised for the first time in this court, cannot be considered. Waggoner v. Snody, 36 Tex. Civ. App. 514, 82 S. W. 356; Anderson v. Chandler, 18 Tex. 436; Shelby v. Burtis, 18 Tex. 645; Hughes v. Roper, 42 Tex. 116; Caruth v. Grigsby, 57 Tex. 269; Triggs v. Jones, 46 Minn. 277, 48 N. W. 1115. More-

over, appellees urge that if it should be held that Wynn and Duncan owned any interest in the royalty, such was only an equitable interest, since the evidence showed that Hoffer made an assignment of the legal title to the royalty to McDonald, who put in issue the cancellation of the Hoffer assignment; that the judgment canceling said assignment from Hoffer having been sought by McDonald and associates is binding on those owning only an equitable interest. Dean v. Jagoe, 46 Tex. Civ. App. 389, 103 S. W. 195, writ refused; Masterson et al. v. Pullen (Tex. Civ. App.) 207 S. W. 537. Oliver testified that he paid $1,000 of his own money, and that Evans paid $1,000 to make up the purchase price, to wit, $17,500; that he and Mr. Evans paid the $2,000 out of their own pockets. He further testified that he "paid and indorsed a check for Ike A. Wynn for a one-thirtieth interest for $1,000, and for A. W. Duncan for $1,000," but since the evidence unmistakably shows that the defendants got $15,500 from the plaintiffs and the intervener, it is plain that the amounts paid by Oliver and Evans "out of their own pockets" were the amounts which it is claimed had been subscribed, and yet not paid, by Wynn and Duncan. Hence we think the evidence amply sustains the finding of the trial court upon this question. Therefore this assignment is overruled.

The second proposition is as follows:

"Before a court is warranted in rendering a joint and several judgment against two or more defendants charged with having entered into a combination or conspiracy to make false and fraudulent representations to induce the investment of funds by others in an enterprise being promoted by such defendants, the evidence must not only show the formation and existence of such unlawful combination and conspiracy to make false and fraudulent representations, but that false and fraudulent representations were in fact made in furtherance of such conspiracy; that the representations made were material, and that the parties to whom the same were made were induced thereby to part with their money in reliance upon said representations alone."

Under this proposition appellants assert: (1) That no agreement, combination, or conspiracy was formed by appellants for the purpose and with the intention of making false representations to induce subscriptions to the syndicate formed by them; (2) that no material false or fraudulent representations were made by them to induce such subscriptions; and (3) that appellees and intervener were not induced by the representations that were made, even if they had the right to rely upon such representations as a statement of fact, to purchase their respective units in such syndicate.

The court found that the defendants Oliver and Evans, in order to induce Huckins and Birchfield to enter into the enterprise, made,

in substance, the following statements and representations to them: That the interest of said Hoffer in said royalty could be purchased for the sum of $30,000, and that it would be necessary to raise said sum in order to purchase said royalty interest. That the defendants Oliver and Evans had each subscribed and would pay the sum of $5,000 of said total sum of $30,000 for said purpose, and would be and become jointly interested with the plaintiffs and such other persons as might become interested as purchasers of such royalty interest at said price and amount of $30,000, to the extent of said amounts so subscribed and agreed to be paid by them. That said Huckins and Birchfield, together with such other persons as might subscribe to said fund, would become equally and jointly interested with said defendants in proportion to the amount so subscribed by them, and that all of said parties would be entering upon said transaction upon equal terms in proportion to the amounts so subscribed and paid by them. That there were two wells on said lease at said time, which were producing about 2,100 barrels of oil per day, and that with such production said investment of $30,000 would pay 30 per cent. interest per annum. That Oliver and Evans delivered to the said Huckins and Birchfield separately the memorandum statements representing that the production on said property at said time was 2,100 barrels daily, and that upon said production same would earn 30 per cent. annually. That said Oliver and Evans each drew his check for $5,000, to pay for his subscription to the syndicate. Like representations were made by one or more of the defendants to the other appellees, and each of the plaintiffs and the intervener testified that he was induced, by a reliance upon the truth of said statements, to subscribe the amount he did subscribe.

We think the evidence is sufficient to sustain the finding of the court that the plaintiffs and the intervener, Duringer, were induced to enter into the enterprise by reason of the representations made by the defendants to the several appellees, and that the three defendants in making these representations were doing so in pursuance of a conspiracy to defraud plaintiffs, and that each of the three defendants participated in the fraud and in the profits resulting from such conspiracy.

Plaintiffs had two counts in their petition, the first count charged a conspiracy on the part of said three defendants to represent to the plaintiffs and others the alleged false statements, and to induce the plaintiffs to subscribe the amounts they did. In the second count it was alleged that the defendants induced the plaintiffs to join them in the enterprise for the acquisition of said oil and royalty interest by fraudulent representations.

The evidence is ample to sustain the find-

ing that the defendants falsely represented the price at which the royalty interest could be bought; that Oliver and Evans were each to subscribe and pay $5,000 interest and McDonald was to subscribe and pay $2,500 interest; and that the wells then in operation on the land under lease were producing from 2,000 to 2,100 barrels daily. The evidence further shows that neither McDonald, Oliver, nor Evans actually paid any money into the enterprise, except the $2,000 which Oliver claimed he and Evans paid for the interest subscribed by Wynn and Duncan. It is further shown by the testimony of defendants themselves that McDonald only paid $17,500 for the assignment of the royalty. The evidence shows that on May 18, 1919, the production in oil of the wells in question was 1,270.64 barrels; that there was a gradual reduction in the production to June 1st, when it was 962.96 barrels; that there was a further and almost continuous reduction to June 16th, when it was 523.24 barrels. Therefore, at the time the defendants made the statements that the wells were producing 2,100 barrels daily, and for some weeks prior thereto and subsequent thereto, the production from the three wells was considerably less than the stated amount, ranging from 1,270.64 barrels on May 18th to 523.24 barrels on June 16th. On several of the days in June the production was considerably less than 400 barrels.

[4-7] It was not necessary in order to support the finding of the court to show by direct evidence that an agreement or conspiracy had been entered into on the part of McDonald, Oliver, and Evans, by which they undertook and agreed among themselves to make to the several plaintiffs and the intervener false and fraudulent representations such as were calculated to, and did, induce said parties to invest their funds in this enterprise; that is, such fact need not be shown by actual proof of when, how and through what conversations and agreements said conspiracy was formed. The existence of a conspiracy is generally a matter of inference, deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful purpose in common between them. The existence of the agreement or joint assent of the minds need not be proved directly, but may be inferred by the court or jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose and to pursue it by common means. 5 R. C. L. p. 1088, § 37. See Weatherred v. Finley, 57 Tex. Civ. App. 50, 121 S. W. 895. Nor was it necessary to show that all of the defendants were present at each of the times when fraudulent statements and representations were made to the plaintiffs. Oliver and Evans made statements to Huckins and Birchfield which the court was authorized in finding were fraudulent. The same parties made statements of the same character to C. C. Coleman. Oliver made like statements to Dr. W. A. Duringer; Oliver and Evans made like statements to E. T. Renfro, and McDonald made the same character of statements to R. E. Winger. The fact of a conspiracy having been established, either by direct testimony or circumstantially, each of the conspirators is liable for the acts and words of each of the other conspirators, in furtherance of the common purpose, until the purpose of the conspiracy had been consummated. The evidence is sufficient to show that these three defendants all knew the falsity of the statements alleged against them that they were paying $30,000 for the royalty, and that the defendants themselves were paying in cash a considerable amount of the subscription; that all of the parties, including these defendants and the plaintiffs and the intervener, were to go in "on the ground floor," and, probably, that the wells then in operation on the lease were producing some 2,100 barrels a day. It is likewise borne out by the evidence that these statements were false, and were made for the purpose of inducing the plaintiffs and the intervener to invest their funds, and that they relied, in part at least, on these statements. To avoid a contract for fraud or misrepresentation, it is not necessary that the fraud should have been the sole cause of making the contract, but it is sufficient if the fraudulent representation was relied on to the extent that it was a material factor in inducing the making of the contract, and without which the same would not have been made. Buchanan v. Burnett, 102 Tex. 495, 119 S. W. 1149, 132 Am. St. Rep. 900; Railway Co. v. Jowers (Tex. Civ. App.) 110 S. W. 951; International & G. N. Ry. Co. v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1196; Hart-Parr Co. v. Krizan & Maler (Tex. Civ. App.) 212 S. W. 835. That some of the defendants may have suggested to the plaintiffs that the latter could telephone or see T. B. Hoffer and learn more about the amount of oil then being produced upon the lease, or that the plaintiffs failed to see Hoffer, would not in any way preclude their right of recovery. McDonald testified that he told Hoffer not to tell any one the price paid by him to the latter for the royalty, and that Hoffer replied that it was nobody's business. Hence it appears, through the evidence of the defendants themselves, that Hoffer was urged not to give truthful information to any inquirer with reference to this matter, and that it would have been useless for the plaintiffs to have applied to him for the truth with reference to the matter.

[8] Nor do we think the seventh assignment shows error, which assignment attacks the judgment of the court in favor of the intervener, Duringer, against Evans and McDonald, inasmuch as the evidence shows that Oliver and McDonald had the conversation

which resulted in Duringer's subscribing $2,-500. If Oliver, the conspiracy having been established, made the statement in furtherance of the purpose of the conspiracy, Evans and McDonald would be liable for any untruthful statements made or fraud perpetrated. We think the evidence sufficient to show that the conspiracy was formed by these three defendants. We conclude that the judgment as between the plaintiffs and the intervener on one side, and the defendants McDonald, Oliver, and Evans on the other, should be affirmed, and it is accordingly ordered.

The court found that at no time did Hoffer make any statements to the defendant McDonald, or either of his associates, that the wells on the lease in question were then producing, or had been producing, 2,100 barrels per day. The court further found that Hoffer in a conversation with McDonald stated that he had no report of the pipe line runs of said lease subsequent to May 15, 1919, and his only source of information was through telephone reports coming to his office from the field or from Wichita Falls, and that the same were not authentic or final. The court further found that Hoffer suggested to McDonald and Evans that he would telephone Mr. Broday at Wichita Falls, who was field superintendent for the Humble Oil & Refining Company there, with which company Hoffer also was connected, and request that he show McDonald and Evans the lease and the wells both completed and under construction, and give to them whatever information Broday had relative to the same; that he did telephone Mr. Broday, and that defendant Evans went to Wichita Falls, met Broday, and was advised by the latter that the production from the wells on said lease was about 2,000 barrels per day; that the said defendant Evans did not go on said lease at said time because it was raining; that this trip to Wichita Falls was made by Evans after the deal had been entered into with Hoffer, but before its final consummation.

[9, 10] Ordinarily, where a principal directs a person to go to his agent for information, the principal is bound by the information given by the agent upon the subject referred to him. Mech. Law of Agency, vol. 2, p. 1350, §§ 1778, 1779. For similar reasons, if the principal refers a person for information to another, though not then his agent, as a person authorized to speak for the principal and on his account, what such person says, when so referred to respecting the matter in question, will be admissible against the principal, but not unless he was referred to as a person authorized to speak on the principal's account. Cabaness v. Holland, 19 Tex. Civ. App. 383, 47 S. W. 379, 382, writ denied; Rosenbury v. Angell, 6 Mich. 508; Aldridge v. Ætna Life Ins. Co., 204 N. Y. 83, 97 N. E. 399, 38 L. R. A. (N. S.) 343.

The court found that Hoffer did state to McDonald that, while he would not say that the property was producing 2,100 barrels per day, it was producing 1,700 barrels daily, or between 1,500 and 2,000 barrels. The court further found that at the time of this conversation between Hoffer and McDonald Hoffer had in his possession the daily pipe line returns up to May 15; that at the time said statements were made by Hoffer to McDonald the wells on said lease were not producing daily 1,700 barrels, or between 1,500 to 2,000 barrels; that the statement of the pipe line runs from May 1 to May 15, 1919, had not averaged more than 1,320 barrels daily, and said statement showed the output was constantly diminishing. We are of the opinion that under the circumstances shown Hoffer was bound by the statement of Broday to Evans that the wells were producing about 2,000 daily, and that this statement, as well as the statement of Hoffer that the wells were producing from 1,500 to 2,000 barrels daily, was false.

[11, 12] Appellant Hoffer urges that appellants McDonald, Evans, and Oliver should not be allowed to recover against him for any amount recovered against them by the plaintiffs and intervener, inasmuch as McDonald and associates did not come into court with clean hands, and the very judgment against Hoffer for fraud also condemns McDonald, Evans, and Oliver for fraud. We understand that the rule in equity that, "He who comes into equity must come with clean hands," means that in the transaction out of which the litigation arose the one seeking affirmative relief against another must not have been guilty of unfair dealing or wrongdoing in that transaction. So far as the record discloses, McDonald, Evans, and Oliver in the trade between them and Hoffer were not guilty of any fraud. Therefore, as to any suit between them and Hoffer, they would not be debarred from a remedy because in a subsequent transaction between them and others they were guilty of fraud.

[13] It has been held that one of two against whom a recovery has been had for a tort, cannot recover over against his cotortfeasor. Galveston, H. & S. A. Ry. Co. v. Nass (Tex. Civ. App.) 57 S. W. 910, affirmed by the Supreme Court in 94 Tex. 255, 59 S. W. 870. But this rule is based on the theory that the plaintiff had a cause of action against both defendants and recovered against one, or that plaintiff recovered against the only defendant liable. In either event, the defendant recovered against cannot recover over against his codefendant. But in the instant case, if McDonald, Evans, and Oliver have any cause of action against Hoffer, such cause of action is independent of and not connected with any cause of action asserted by plaintiffs and intervener. It is dependent upon a different state of facts. The liability, if any, of Hoffer to McDonald

and associates is not dependent upon or measured by any recovery by the plaintiffs against McDonald and associates. These are separate causes of action. It is true McDonald et al. asked in their prayer, if any judgment should be had against them in favor of plaintiffs, that a judgment in like amount be awarded the defendants against Hoffer. But according to our ideas such prayer did not measure Hoffer's liability, if any. If McDonald et al. were entitled to a rescission of the contract of purchase from Hoffer, they would be entitled to a judgment for the amount paid Hoffer, and not the amount they had been forced to pay to plaintiffs because of subsequent fraud.

We think the cause of action, if any, between McDonald et al. and Hoffer was pleaded and tried upon a wrong theory, and that the judgment should be reversed and the cause remanded as to such issues. Judgment is affirmed in so far as plaintiffs and intervener's judgment against McDonald, Evans, and Oliver is concerned, but is reversed and cause remanded as to plea over of McDonald et al. against Hoffer.

Reversed and remanded in part, and affirmed in part.

### On Motion for Rehearing.

[14] Appellants Oliver, Evans, and McDonald call our attention to the following excerpt from our opinion on original hearing, to wit:

"That some of the defendants may have suggested to the plaintiffs that the latter could telephone or see T. B. Hoffer and learn more about the amount of oil then being produced upon the lease, or that the plaintiffs failed to see Hoffer, would not in any way preclude their right of recovery. McDonald testified that he told Hoffer not to tell any one the price paid by him to the latter for the royalty, and that Hoffer replied that it was nobody's business. Hence it appears, through the evidence of defendants themselves, that Hoffer was urged not to give truthful information to any inquirer with reference to this matter, and that it would have been useless for the plaintiffs to have applied to him for the truth with reference to the matter."

It is urged that this request by McDonald to Hoffer was made some 30 or 60 days after Hoffer had been paid the $17,500, and therefore longer after the representations made by the defendants to plaintiffs as to the price to be paid for the royalty and the amount of the daily production of oil. The record discloses that this conversation over the telephone between McDonald and Hoffer probably occurred 30 days or more after some, if not all, of the plaintiffs and the intervener subscribed for an interest in the syndicate, and we gladly make this correction. But we do not think this fact precluded the plaintiffs from their right of recovery. If the representations made by defendants to plaintiffs (hereinafter to include intervener) to induce them to invest in the enterprise were fraudulent, and the plaintiffs relied thereon, they would have been entitled to recover in this action, though by the exercise of ordinary diligence they might have found out the truth and that such representations were false. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Holstein v. Adams, 72 Tex. 485, 10 S. W. 560; Hall v. Grayson County National Bank, 36 Tex. Civ. App. 317, 81 S. W. 762.

We have carefully considered appellants' motion for rehearing, but we believe it should be overruled; and it is accordingly ordered.